UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

CASE NO. 19-15052

_____

TRUDY MIGHTY, as Personal Representative
of the Estate of David N. Alexis, deceased,

Plaintiff/Appellant,

v.

MIAMI-DADE COUNTY and OFFICER MIGUEL CARBALLOSA,

Defendants/Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

_____

_____

**APPELLANT'S INITIAL BRIEF**

_____

Roy D. Wasson
Wasson & Associates, Chartered
Courthouse Plaza—Suite 600
28 West Flagler Street
Miami, FL 33130
(305) 372-5220 Telephone
roy@wassonandassociates.com

Mary Margaret Schneider,
Frank Labrador, Peter Demahy
DLD Lawyers
806 Douglas Road, 12th Floor
Coral Gables, Florida 33134
(305) 443-4850 Telephone
mmschneider@dldlawyers.com
flabrador@dldlawyers.com
pdemahy@dldlawyers.com

Counsel for Appellant

*Mighty v. Miami-Dade County*
Case No. 19-15052

## CERTIFICATE OF INTERESTED PERSONS/
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 28-1(b), the undersigned counsel for Plaintiff/Appellant, Trudy Mighty, certifies that the following is a list of all trial judge(s) and all attorneys, persons, associations or persons, firms, partnerships, corporations or governmental entities that have an interest in the outcome of this case:

1. Alexis, Teyliah, minor statutory survivor of David N. Alexis
2. Alfonso, Annery Pulgar, Assistant County Attorney
3. Carballosa, Miguel, Defendant/Appellee
4. Crosby, Shannon, Counsel for Plaintiff/Appellant
5. DeMahy, Labrador, Drake Victor Rojas & Cabeza, Counsel for Plaintiff/Appellant
6. DeMahy, Pedro L., Counsel for Plaintiff/Appellant
7. Hochstadt, Jennifer L., Counsel for Counsel for Defendant/Appellee Carballosa;
8. Labrador, Frank, Counsel for Plaintiff/Appellant
9. Miami-Dade County, Defendant/Appellee
10. Miami-Dade County Attorney's Office
11. Mighty, Trudy, Plaintiff/Appellant
12. Moreno, Hon. Federico, A., United States District Judge
13. McAliley, Hon. Chris M., United States Magistrate Judge
14. Pastor, Bernard, Assistant County Attorney, Counsel for Defendant/Appellee

C1 of 2

*Mighty v. Miami-Dade County*
Case No. 19-15052

15. Schneider, Mary Margaret, Counsel for Plaintiff/Appellant

16. Viciana, Ana Angelica, Counsel for Defendant/Appellee

17. Wasson, Roy D., Counsel for Appellant

18. Wasson & Associates, Chartered, Counsel for Appellant


By:    *s/Roy D. Wasson*
       ROY D. WASSON
       Florida Bar No. 332070

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes that oral argument would be very important and useful in this case. The verdict in favor of the Defendant/Appellee was based upon hundreds of pages of direct and circumstantial evidence, the nuances of which must be fully understood to permit the Court to determine the harmful effects of the district court's rulings hereunder review.  The panel will likely have questions regarding details about the testimony, documentary evidence, and rulings affecting introduction of that evidence below.  The parties should be afforded the opportunity to address this Court's questions concerning those issues at oral argument.

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS/ CORPORATE DISCLOSURE STATEMENT..........................................................................1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CITATIONS ...................................................................... iv

STATEMENT OF JURISDICTION.......................................................... vi

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF THE CASE..................................................................2

    A.   Nature of the Case:..............................................................2

    B.   Course of Proceedings and Dispositions Below:................................4

    C.   Statement of the Facts:.........................................................13

    D.   Scope or Standard of Review.............................................29

THE DISTRICT COURT ABUSED ITS DISCRETION IN PERMITTING DEFENSE EXPERT EMMA LEW TO PROVIDE UNDISCLOSED TESTIMONY AND REFUSED TO GIVE A REQUESTED CURATIVE INSTRUCTION .........................32

THE TRIAL COURT ERRONEOUSLY ALLOWED MS. ACEVEDO'S TESTIMONY ABOUT MR. ALEXIS' PRIOR BAD ACT OF POINTING A GUN AT HER.................................42

THE DISTRICT COURT ABUSED ITS DISCRETION IN EXCLUDING FROM EVIDENCE DAVID ALEXIS' PISTOL ................48

THE COURT ERRED IN PRECLUDING PLAINTIFF FROM INTRODUCING PORTIONS OF DEFENDANT CARBALLOSA'S VIDEOTAPED DEPOSITION AND THEN FORBIDDING HER FROM ASKING HIM LEADING QUESTIONS DURING HER CASE-IN-CHIEF, WHICH

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

TAKEN TOGETHER, WENT BEYOND THE EXERCISE OF
REASONABLE CONTROL ........................................................................52

CONCLUSION .....................................................................................................54

CERTIFICATE OF SERVICE ..............................................................................55

CERTIFICATE OF COMPLIANCE .....................................................................55

SERVICE LIST......................................................................................................56

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## **TABLE OF CITATIONS**

### **Cases**

*Adams v. Austal U.S.A., LLC*, 754 F.3d 1240 (11th Cir. 2014)...............................37

*Allison v. McGhan Med. Corp.*, 184 F.3d 1300 (11th Cir. 1999)...........................39

*Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281 (D.D.C. 2018).......38

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579,  589  (1993) ................. passim

*Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529 (E.D.N.Y. 2011) ........................46

*MacMillian v. Roddenberry*, 432 Fed. Appx. 890 (11th Cir. 2011).......................46

*McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253 (11th Cir. 2002)..............38

*Mighty v. Miami-Dade County*, 659 F. App'x. 969 (11th Cir. 2016)...................5, 6

*Mighty v. Miami-Dade County,* 728 F. App'x. 974 (11th Cir. 2018).....................33

*Palmquist v. Selvik*, 111 F.3d 1332 (7th Cir. 1997)................................................46

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333 (11th Cir. 2003)36

*Rubalcava v. City of Los Angeles*, 64 F.3d 1323 (9th Cir. 1995) ..........................46

*U.S. v. Baker*, 432 F.3d 1189 (11th Cir. 2005) ......................................................43

*U.S. v. Farmer*, 553 F. App'x. 901 (11th Cir. 2014) ..............................................43

*U.S. v. Green*, 873 F.3d 846 (11th Cir. 2017)........................................................45

*U.S. v. Hands*, 184 F.3d 1322 (11th Cir. 1999) ............................................... 45, 47

*U.S. v. Henderson*, 409 F.3d 1293 (11th Cir. 2005) ........................................ 45, 47

*U.S. v. Sanders*, 668 F.3d 1298 (11th Cir. 2012)...................................................43

*U.S. v. Youts*, 229 F.3d 1312 (10th Cir. 2000)........................................................44

*United States v. Covington*, 565 F.3d 1336 (11th Cir. 2009) .................................47

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

*United States v. Hamaker*, 455 F.3d 1316 (11th Cir. 2006) ....................................42

*Valdes v. Miami-Dade Cnty*, No. 12-22426-CIV- MORENO/O'SULLIVAN, 2015 WL 7253045 (S.D. Fla. Nov. 117, 2015) ....................................46

*Williams v. Asplundh Tree Expert Co.,* No. 3:05-cv-479-J-33MCR, 2006 U.S. Dist. LEXIS 73238 (M.D. Fla. Oct. 6, 2006) ........................................44

## **Statutes**

28 U.S.C. §1291 ............................................................................ vi

28 U.S.C. §1331 ............................................................................ vi

42 U.S.C. §1983 ............................................................................ vi

## **Rules**

Fed. R. Civ. P. 26 ......................................................................36

Fed. R. Civ. P. 32....................................................................52

Fed. R. Civ. P. 37....................................................................36

Fed. R. Evid. 401 ......................................................................43

Fed. R. Evid. 402 ......................................................................43

Fed. R. Evid. 403 .......................................................... 41, 43, 47

Fed. R. Evid. 404 .................................................................. passim

Fed. R. Evid. 611 .............................................................. 52, 53

Fed. R. Evid. 702 .......................................................... 38, 39, 40, 41

Fed. R. Evid. 801 ......................................................................53

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## **STATEMENT OF JURISDICTION**

This is an appeal from a final judgment entered by the United States District Court for the Southern District of Florida.  The district court had jurisdiction over the controversy  because it was a "civil action[] arising under the Constitution, laws, or treaties of the United States," within the meaning of 28 U.S.C. §1331, to wit: violation of the civil rights of a young black man shot and killed by police actionable pursuant to 42 U.S.C. §1983.

This Court has jurisdiction over this appeal because the judgment under review is a "final decision[] of the district court[] of the United States," reviewable pursuant to 28 U.S.C. §1291.

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## STATEMENT OF THE ISSUES

WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN PERMITTING DEFENSE EXPERT EMMA LEW TO PROVIDE UNDISCLOSED TESTIMONY AND REFUSING TO GIVE A REQUESTED CURATIVE INSTRUCTION

WHETHER THE TRIAL COURT ERRONEOUSLY ALLOWED MS. ACEVEDO'S TESTIMONY ABOUT MR. ALEXIS' PRIOR BAD ACT OF POINTING A GUN AT HER

WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN EXCLUDING FROM EVIDENCE DAVID ALEXIS' PISTOL

WHETHER THE COURT ERRED IN PRECLUDING PLAINTIFF FROM INTRODUCING PORTIONS OF DEFENDANT CARBALLOSA'S VIDEOTAPED DEPOSITION AND THEN FORBIDDING HER FROM ASKING HIM LEADING QUESTIONS DURING HER CASE-IN-CHIEF, WHICH TAKEN TOGETHER, WENT BEYOND THE EXERCISE OF REASONABLE CONTROL

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## STATEMENT OF THE CASE

### A. Nature of the Case:

This is an appeal from a final judgment (DE 333) in favor of the Defendant/Appellee, Miguel Carballosa, on the Plaintiff/Appellant's claim for damages arising from Defendant Carballosa's shooting and killing of David M. Alexis brought pursuant to 42 U.S.C. §1983. Mr. Alexis, a young black man whom the Plaintiff contended was unarmed when he was killed, was shot by Defendant Carballosa outside of his residence after he had exited his vehicle to open the gate and was engaged in some sort of encounter with Defendant Carballosa who was in the neighborhood performing surveillance in an unrelated matter. DE 365 at 135-140.

Most of the important facts of the case were undisputed. Both sides agreed that the Defendant Carballosa shot David Alexis five times with his service weapon, killing him in front of his parents' house. DE 365 at 137. The parties agreed that David Alexis was not suspected of any crime when he was killed. DE 365 at 152. Both sides agreed that some of the bullets which struck Mr. Alexis pierced his body in a back-to-front direction while one or more of the rounds displayed a front-to-back pathway through his body. DE 365 at 254.

2

It is undisputed that David Alexis owned a Springfield pistol which was found on the ground after the smoke cleared in the general vicinity of the shooting. DE 365 at 225. Mr. Alexis had a concealed weapons permit for that registered firearm which he was known to keep in his car. DE 363 at 87. However, that gun owned by Mr. Alexis was not fired on the night in question, did not have a bullet in the firing chamber making it ready to shoot, and did not have any fingerprints on it whatsoever. DE 364 at 21, 93. That gun was found about twenty feet from Mr. Alexis' body amid the pattern of expended shell casings that were ejected to the rear and right of Defendant Carballosa as he was shooting Mr. Alexis. DE 364 at 20.

The main dispute in the evidence was whether David Alexis was armed with his pistol concealed behind his back as he approached Defendant Carballosa, who was sitting in an unmarked police vehicle across the street from the victim's house. DE 365 at 110-123. It was the Plaintiff's position at trial that the physical and forensic evidence contradicted Defendant Carballosa's account of those facts, in that the location of the gun—on the ground so far away from Mr. Alexis' body and behind some of Defendant Carballosa's spent cartridges—meant either 1) that Mr. Alexis dropped his gun (as allegedly commanded by the Defendant) before he was shot, as he backed across the street unarmed; or 2) that he somehow threw the hefty steel weapon twenty feet onto the pavement without causing it to have any visible

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

damage; or 3) that the pistol somehow mysteriously appeared in its final resting spot by some other mechanism. DE 363 at 19-22.

### B. Course of Proceedings and Dispositions Below:

This action was filed in the United States District Court for the Southern District of Florida on January 23, 2015 by the Plaintiff, Trudy Mighty, as Personal Representative of the Estate of David M. Alexis. DE 1. By way of her First Amended Complaint for Damages, the Plaintiff brought a *Monell* claim against Miami-Dade County pursuant to 42 U.S.C. §1983 (DE 17 at 8); a count against Defendant Carballosa under §1983 based on his excessive use of force in the encounter with Mr. Alexis (DE 17 at 10); and counts under Florida state law against Miami Dade County (DE 17 at 14) and Defendant Carballosa (DE 17 at 16) for wrongful death arising from negligence.

Defendant Carballosa moved to dismiss the amended complaint alleging protection of the Qualified Immunity Doctrine and claiming that his use of force was "reasonable under the circumstances" as a matter of law.  DE 25.  Miami-Dade County moved to dismiss the First Amended Complaint on the ground that "it does not state any plausible claims against the County."  DE 23 at 1.  Those motions were referred to a magistrate judge who entered a report and recommendation on June 9, 2015 recommending that Defendant Carballosa's motion be denied.  DE 42.

4

The magistrate judge found that, under the facts alleged in the amended complaint, Plaintiff demonstrated that Defendant Carballosa's use of deadly force against Mr. Alexis was objectively unreasonable and in violation of his Fourth Amendment rights because "there are no factual allegations in the First Amended Complaint to support the conclusion that Officer Carballosa's use of force against Mr. Alexis was justified."  DE 42 at 3-4 n.2.

On August 25, 2015, the District Court entered its Order Adopting Magistrate's Report and Recommendation and Denying Defendant Carballosa's Motion to Dismiss.  DE 55. That order expressly adopted the magistrate judge's report and recommendation and denied Defendant's motion to dismiss based on qualified immunity.  DE 55 at 1.

Defendant Carballosa appealed the district court's denial of his motion to dismiss.  DE 61.  This Court in case number 15-14058 rendered its unpublished opinion on August 10, 2016 affirming the district court's denial of Defendant Carballosa's motion to dismiss.  *See Mighty v. Miami-Dade County*, 659 F. App'x. 969 (11th Cir. 2016)(hereinafter "*Mighty I*").  In affirming the denial of Defendant's motion to dismiss, this Court held as follows:

> Construing the amended complaint in Plaintiff's favor, we agree with the district court that Plaintiff has alleged a plausible Fourth Amendment violation.  Plaintiff alleges that Alexis was unarmed and

standing in front of his parents' home when he was shot and killed shortly after arriving home from work.  He was even shot at least once in the back as he attempted to retreat indoors.  Based on these facts, we infer that Alexis was not committing or attempting to commit a crime, as he was simply returning home.  Nor was he fleeing or actively resisting arrest. These facts support Plaintiff's allegation that Alexis did not pose an immediate risk of serious harm when he was shot. In other words, assuming these allegations are true, Defendant was unprovoked when he shot Alexis who objectively posed no threat.

*Mighty I,* at 972.

Following various pretrial proceedings, Defendant Carballosa filed a motion for summary judgment, again asserting the qualified immunity defense.  DE 161. That motion was assigned to a magistrate judge who concluded that, "[c]ontrary to officer Carballosa's assertions, there is evidence that demonstrates that [the Defendant] was not in immediate peril," and recommended that the district court deny the qualified immunity defense.  DE 204.

The district court entered its Order Adopting Magistrate's Report on Recommendation and Denying Defendant Miguel Carballosa's Motion for Summary Judgment. DE 218.  Officer Carballosa appealed that order denying his motion for summary judgment.  DE 219.

This Court issued its unpublished opinion affirming the district court's denial of Defendant's motion for summary judgment.  *See Mighty v. Miami-Dade County*, 728 F. App'x. 974 (11th Cir. 2018)("*Mighty II*").  This Court's opinion in *Mighty II*,

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

in affirming the denial of Defendant Carballosa's motion for summary judgment

based on qualified immunity, summarized the evidence as follows:

On October 2, 2012, Miami-Dade Police Department officers
saw a vehicle suspiciously circling a supermarket. Fifteen minutes later,
other officers stopped the vehicle. The driver fled from the stop.
Officers used the vehicle's tag information to try to locate the driver.
This search revealed that the car was a rental car that had been rented
to Nathalie Jean-Baptiste. Defendant then established a surveillance
point near Jean-Baptiste's home, parking his white pick-up truck a few
houses down from the residence. The truck was unmarked, meaning
that there was nothing on the truck to identify it as a police vehicle.

At around 11:15pm, while Defendant was conducting
surveillance, a car began pulling into a residence across the street from
where Defendant was parked. The car did not match the description of
the car from the traffic stop and the car was not pulling into Jean-
Baptiste's home. The driver of the car was David Alexis and he was
pulling into the home he shared with his parents. A few minutes earlier,
after Alexis had finished work at North Shore Hospital, his friend and
former girlfriend Yalysher Acevedo met him at the hospital. Alexis
drove his car and Acevedo followed in her car to Alexis's house. Alexis
was going home to change his clothes, and then Alexis and Acevedo
were planning to go to the beach to talk and have dinner.

According to Defendant, after Alexis pulled into his house,
Alexis walked across the street towards Defendant's vehicle. Defendant
stated that while Alexis was walking towards Defendant, Alexis's right
hand was concealed behind his back and thus Defendant could not see
that hand. Alexis looked through Defendant's front windshield.
According to Defendant, Defendant then rolled down his window,
identified himself as a police officer, and said "Let me see your hands."
Defendant stated that Alexis said nothing, did not comply with
Defendant's commands, and instead backed away with his right hand
still concealed behind his back. According to Defendant, as Alexis was
backing away, Defendant exited his vehicle, and Alexis brought his

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

right hand around, revealing that he was holding a gun. Defendant stated that Alexis was holding his gun "outward, low, ready and it appeared like it was coming upwards." Defendant stated that when he saw Alexis's gun, he immediately discharged his weapon, firing multiple times and killing Alexis. Defendant fired the first shot at the front of Alexis's body. However, the remaining shots were to Alexis's side and back, which, according to Plaintiff, suggests that Alexis turned away from Defendant while Defendant was shooting him.

As Defendant was firing his weapon, Acevedo pulled up. Acevedo saw Defendant standing in the middle of the street shooting at Alexis. According to Acevedo, Alexis was screaming and turning to run inside his house. Acevedo did not see a gun in Alexis's hand or on the street. Acevedo was scared so she did a U-turn and called 911. Acevedo later returned to the scene and spoke with police officers. Acevedo told the officers that she had previously seen Alexis carry a gun on his person and in his car. Officers discovered that Alexis had a concealed carry permit and found a gun registered to Alexis on the street.

As noted, Defendant testified that Alexis failed to comply with Defendant's commands and further that Alexis's right hand moved forward and up. Plaintiff's expert on the proper use of police force, Joseph Stine, disagreed, testifying that under Defendant's version of events, Plaintiff had complied with Defendant's commands. That is, Defendant had told Alexis, "Show me your hands," and never told him to drop his gun. Alexis complied with that directive, according to the expert.

As to whether evidence existed to dispute Defendant's claim that Plaintiff was armed at the time he was shot, Plaintiff's expert witness on firearms and ammunition, Gerald Styers, testified that in his opinion there was evidence to support an inference that Alexis was not holding a gun at the time he was shot. First, Alexis's gun had been found 20 feet away from Alexis's body. Styers also noted that Alexis's gun had been found among the spent shell casings that had fallen when Defendant fired his gun and that Defendant's gun ejects its cartridge cases to the right and to the rear of the gun. Styers also discounted as

8

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

an explanation for Alexis's gun being near where Defendant fired his own gun the possibility that Alexis had thrown the gun[2] because Styers found no markings or gouges on the gun, which he would have expected to find because the gun would have landed on asphalt. All of this led Styers to conclude that Alexis "was not in possession of the firearm when he was fired . . . upon."

> [2] Notably, Defendant never said that Alexis threw the gun or offered any explanation how Alexis's gun happened to find itself near where Defendant would have been standing when Defendant shot Alexis. Further, in the report and recommendation, adopted by the district court when it denied summary judgment, the magistrate judge noted that Defendant's various accounts were "inconsistent and contradictory" concerning "when, where, and how" Defendant had perceived the possession of a gun by Alexis, as well as other material facts concerning Defendant's encounter with Alexis.

728 F. App'x 976-77 & n.2.

Defendant petitioned for rehearing and rehearing en banc in *Mighty II*. This Court denied rehearing and denied rehearing en banc.

Further pretrial proceedings ensued, including multiple motions in limine and motions to exclude expert testimony based upon *Daubert*. DE 237, 238, 240, 243, 244, 246, 247. Four of those motions (DE 238, 242, 243 and 245) were referred to a magistrate judge for a report and recommendation. DE 261. Another six of the motions in limine (DE 237, 240, 241, 244, 246, and 247) were scheduled for hearing before the district judge. DE 265.

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

One of those motions heard before trial was Plaintiff's Motion in Limine to Exclude any Reference or Evidence Related to any Related Alleged Prior Bad Acts of David M. Alexis.  DE 244.  That motion sought to exclude evidence of David Alexis' prior criminal acts which did not result in convictions, any "alleged domestic violence instances," and other alleged misconduct.  DE 244 at 2.  Plaintiff's motion in limine argued, inter alia, that "evidence of the victim's [David Alexis'] alleged prior bad acts is not admissible under Rule 404(b)."  DE 244 at 6.

At the hearing on Plaintiff's motion in limine addressing those prior bad acts that Plaintiff sought to exclude, one of which was noted to have involved his former girlfriend, Yalyasher Acevedo, who also was the only eyewitness to Mr. Alexis being shot and killed.  DE 271 at 28.  Judge Moreno raised the topic of one of those prior bad acts involving Ms. Acevedo at the hearing, observing: "She also says that David Alexis, in the past, had brandished a gun at her."  *Id*.  The court denied Plaintiff's motion to exclude Ms. Acevedo's testimony about that prior incident, ruling as follows:

> THE COURT: Alright. Then she'll testify.  It will be an interesting case.  It's your case, I'm just assigned to it at random.
>
> That means Yalyasher Acevedo's testimony is obviously relevant, and ***the Motion to Exclude a Prior Bad Act of David Alexis is denied as it relates to a gun because the gun is an issue***.  Did he put a gun?  Did he have a gun?  The gun is the issue.

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

DE 271 at 29 (emphasis added).

Following a hearing, the district judge entered its Omnibus Order granting in part Defendant Carballosa's Omnibus Motion in Limine. DE 267.  In that omnibus order, Judge Moreno ruled "that Plaintiff's Motion in Limine to Exclude Any References or Evidence Related to Any Alleged Prior Bad Acts of David Alexis is DENIED for the reasons stated in Open Court."  DE 267 at 2.  As noted above, the judge at the hearing on that motion expressly found that the evidence of Mr. Alexis having brandished a firearm and pointed it at his then girlfriend was relevant, and that it was admissible *because* it was relevant.

The magistrate judge issued her report and recommendation on the *Daubert* motion to limit the testimony of Defendants' expert pathologist, Dr. Emma O. Lew. DE 275.  The magistrate judge recommended that the court exclude Dr. Lew's opinions that:

> Police undergo training to respond to deadly threats and fire shots in rapid succession until the threat is neutralized.  They're [sic] training prepares officers to react quickly when perceiving a threat—they do not have time to think and analyze their potential movements because any hesitation could mean that they and/or others could be injured or killed. When an officer is confronted with a perceived deadly threat, it is reasonable that he may not remember all the details of the incident.

DE 275 at 10.

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

The Plaintiff objected to the portion of the magistrate's report and recommendation concerning Dr. Lew's testimony which recommended "that the Court deny the portion of Plaintiff's Motion to Strike Expert Witness Dr. Emma O. Lew's opinion that blood was present in the middle of the street," following Mr. Alexis' killing by Defendant Carballosa.  DE 279.

The magistrate judge issued an Omnibus Report and Recommendation on *Daubert* Motions Regarding Gerald Styers, John Marraccini and Alexander Jason. DE 292.  That R&R recommended that Defendant's *Daubert* motion concerning Plaintiff's expert Styers be granted in part to preclude his opinions concerning the cartridge ejection patterns from a firearm associated with the decedent Alexis which were based upon a methodology called "offhand shooting methodology."  DE 292 at 10.  The R&R recommended denial of the *Daubert* motion concerning his use of the "tripod methodology" to arrive at opinions concerning the location of Mr. Alexis' gun at the time of the events in question.  DE 292 at 11.

The R&R recommended denial of Plaintiff's motion to exclude the testimony of Defendant's rebuttal firearm experts, Alexander Jason.  DE 292 at 22.  The Plaintiff filed an objection to the R&R regarding Defendant's *Daubert* motion directed to Gerald Styers' opinions.  DE 294.  The parties presented argument on the subject R&R at the calendar call held on December 10, 2019, and the district court

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

affirmed and adopted the magistrate judge's R&R.  DE 303.  That order also granted in part and denied in part Plaintiff's motion to strike Defendant's expert witness W. Kenneth Katsaris (DE 241).  *See* DE 303 at 1.

The case was tried before a jury on September 18-24, 2019.  DE 318-326.  The jury returned a verdict in favor of the Defendant.  DE 330.  Final judgment was entered thereon.  DE 333.  The Plaintiff filed a motion for new trial.  DE 343.  That motion was denied.  DE 350.  This appeal ensued.  DE 356.

### C. <u>Statement of the Facts:</u>

Yalyasher Acevedo, a nurse practitioner who was a friend of David Alexis and worked with him at North Shore Medical Center, had plans to go out after work, and she "was following him to his house" so they could go out in the same car.  DE 363 at 49.  She followed him to his neighborhood "but when he turned the corner like to go to his house, [Ms. Acevedo] went around the block, and when [she] went around the block is when the event happened."  DE 363 at 49.

When she completed circling the block, she saw Mr. Alexis in front of his house and "saw somebody in the middle of the street and then [she] hear[d] gun shots."  DE 363 at 49.  The person who was shooting from the middle of the street was wearing "what looked like regular clothes" to Ms. Acevedo, who could not remember the color of his clothing.  DE 363 at 49.  She did not see "anything on the

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

individual in the middle of the street that indicated to [her] that this was a police officer." DE 363 at 49-50.

As Ms. Acevedo was facing the encounter between the shooter and her friend Mr. Alexis, "then the person turned towards [her] while [she] was in [her] car." Tr. 50. Her "initial reaction was to do a U-turn because [she] thought this was [a] person [who] was going to shoot at [her] next." DE 363 at 50.

Mr. Alexis was "in front of his house" when she saw him and testified that the only thing she could "remember is him yelling." Tr. 50. She heard five shots being fired but did not see anyone other than the person in the middle of the street with a gun and did not see any other gun anywhere. DE 363 at 51.

Mr. Alexis owned a gun at the time of the fatal event and had a concealed weapons permit permitting him to carry it. DE 363 at 52. He sometimes would carry it a holster and sometimes "would carry it in his waist." DE 363 at 55.

Following the denial of Plaintiff's motion in limine, Ms. Acevedo was asked about an incident outside of Mr. Alexis' house in which he had pointed a gun at her while she was in her car. DE 363 at 59. At that time, she was so frightened that she feared Mr. Alexis would kill her. DE 363 at 60.

A couple of weeks before the fatal encounter with police, Mr. Alexis had expressed concerns to Ms. Acevedo that there was a white pickup truck that had

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

been casing the block.  DE 363 at 60.  Ms. Acevedo saw that white truck herself. DE 363 at 61.  The police unit from which Defendant Carballosa was operating that night was also a white pickup truck.  DE 363 at 61.

When Ms. Acevedo turned the corner onto Mr. Alexis' block, she could see the white pickup truck on the left and a man in the middle of the street. DE 363 at 63.  Defense counsel cross examined Ms. Acevedo concerning her inability to specifically identify the person she saw in the middle of the street shooting at Mr. Alexis.  DE 363 at 64-65.  However, there was no dispute in the evidence that it was Defendant Carballosa who fired the fatal shots.

When Ms. Acevedo first saw the man in the street, she did not see Mr. Alexis. DE 363 at 66.  Her "initial focus was on the man [in the middle of the street with a gun]," when she testified that "by gunshot three or four . . . at some point [she] did glance and saw David [Alexis].  He looked like he was trying to turn inside his house and just him yelling, like yelling, but in pain, not like any argument."  DE 363 at 67.

The Plaintiff called Defendant Carballosa as a witness. DE 363 at 74.  After only a few questions, counsel for the Plaintiff started to ask a question that began: "So you'd [sic] on this RID [Robbery Intervention Detail]" where the court interrupted without any objection from the Defendant: "Okay. Are you asking leading questions?"  DE 363 at 75.  Plaintiff's counsel tried to explain that he was

15

leading the witness because "[h]e's the Defendant." DE 363 at 75. The judge ruled: "Oh, I don't allow that. You are calling him, so he's your witness." DE 363 at 75. Judge Moreno ruled that the Plaintiff would not be allowed to ask leading questions on direct as a Plaintiff's witness and then cross-examine him when re-called by the defense. His Honor ruled as follows:

> THE COURT: but if you're calling him, you cannot ask leading questions, so you decide. You can either wait until the defense lawyer calls him, because he's only going to testify once, not twice. I don't have a witness testifying twice, but if you decide to call him as you have now knowing that he could be called, especially after the opening statement he obviously is going to testify in the civil case, then you can cross-examine him to your heart's content, but if you choose strategically to call him now, then I won't allow you to cross-examine him on direct and you're going to have to ask nonleading questions. So you decide what you want to do. It matters not to me.

DE 363 at 75-76.

Faced with those alternatives, Plaintiff's counsel chose to "cross-examine him when they [the defense] call him, Your Honor." DE 363 at 76.

The Plaintiff called as a witness, Trudy Mighty, the Plaintiff and personal representative of the Estate of David Alexis. DE 363 at 77. Ms. Mighty is the mother of Mr. Alexis' minor daughter, who was the statutory survivor for whose benefit the lawsuit was brought. DE 363 at 78.

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

Ms. Mighty testified that David Alexis owned a gun which he kept "[i]n the center console in the car whenever he drove." DE 363 at 87. He had purchased that firearm while he was living with Ms. Mighty and their daughter. DE 363 at 87.

When Ms. Mighty's testimony was complete, Plaintiff's counsel explained that he did not have another witness ready because it has been his intention to play part of the Defendant's deposition. DE 363 at 101. However, the trial court reiterated its ruling from a pre-trial hearing that depositions would not be permitted in evidence, even of a party. DE 363 at 101: "And I said last week, if you should have paid attention, that we do not—use depositions." DE 363 at 101.

Once Plaintiff's counsel was denied permission to play the Defendant's deposition, he reiterated his request to call Defendant Carballosa, citing "Rule 611." DE 363 at 102. Judge Moreno reacted to counsel's invocation of a rule of evidence as follows:

> THE COURT: Under the rules—I decide the rules.
>
> MR. DEMAHY: Then I have no one else, Your Honor.
>
> THE COURT: Okay. Under the rules? You're going to tell me about the Rules of Evidence? Is that what you want to do? You want to have a Rules of Evidence fight?
>
> MR. DEMAHY: Which says I can lead an adverse party.
>
> THE COURT: I will not allow you to call a witness that the defendant is going to call. The traditional way of doing it, which is why

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

civil trials are not tried in many places, is you call the defendant, and then after you rest, the defendant calls the defendant, and we get to hear him twice from both of you. And then jurors write letters saying why did the case take too long. So my rule is you call one person once, not twice, and you can bring out everything. At the end of the trial, everything is brought out, everything is brought out, which means there is absolutely no issue on appeal ever on that basis, no issue on appeal.

* * *

I don't think that's what the case is about because that's not what you all said in opening statements. The case is not about whether you can lead an adverse witness or whether the Court has the discretion under Rule 611.

Did you read that part about the judge's discretion into how the witnesses can testify and the order of witnesses? Did you read that part of the rule?

MR. DEMAHY: Yes.

THE COURT: What does it say? Why don't you read that part to me.

MR. DEMAHY: "Control by the Court: The Court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to" –then under C, "Leading questions: Leading question should not be used on direct examination except" –

THE COURT: You're reading from Rule 6 what?

MR. DEMAHY: 611.

THE COURT: What does it say about the judge's discretion, do you know?

MR. DEMAHY: "The Court should exercise reasonable control over the mode and order of examining witnesses," and then under C,

18

"the Court should allow leading questions on cross-examination and when a party calls a hostile witness or an adverse party."

THE COURT: If I let you call him, you're not going to cross-examine him later on. You want to do this the traditional way.

DE 363 at 102-104.

Gerald Styers, Plaintiff's firearms expert, testified in support of the Plaintiff's position that Mr. Alexis was on the other side of the street from Defendant Carballosa and unarmed at the time he was shot and killed.  DE 364-7.  Mr. Styers "reviewed depositions, reports, physical evidence and also visited the incident scene" in arriving at his opinions.  DE 364-11.  He examined the firearm used by Defendant Carballosa to kill David Alexis and "did an ejection pattern testing using a Glock type pistol" of the same model.  DE 364-11.

Mr. Styers explained how "ejection pattern" testing helps identify where the shooter was located during a shooting episode:

Q. Now, you used the word "ejection pattern." Can you explain to the jury what that means?

A. Normally, in semi-automatic or automatic type firearms—first of all, I'll describe what a semi-automatic firearm is. It's a firearm where you load a cartridge, a live cartridge into the chamber and you pull the trigger and it fires. Now, you 2 have a magazine or some other device that has numerous rounds in the firearm itself. By you pulling that trigger, it will fire that cartridge in that chamber. The gases from the burning of the gun powder causes force, equal and opposite force, and it causes the slide on the firearm to retract.

19

At the same time, on that part of the slide, we have a bolt face and surrounding that is an extractor and an ejector on the body of the receiver of the firearm itself. What the extractor does, it pulls that fired cartridge case that was just fired and the gas is burning and you're causing a blowback, and it pulls it out like a claw until it comes to a point where it hits the ejector and the ejector throws that clear of the firearm itself, called the ejection port.

Depending on the type of firearm and where the location of the extractor and ejector are, it can determine what position the fired cartridge case will land at that point.

Q. Does that assist you also in determining where the person shooting that gun may have been located at the time they shot the gun?

A. This is one of the reasons why you would do that type of ejection pattern testing, try to possibly locate where the firearm was positioned location-wise when the firearm was fired.

DE 364-11-12.

Consistent with the court's pretrial ruling, the Plaintiff was limited in asking Mr. Styers about the testing he performed in which he placed the firearm on top of a tripod. DE 364-13. That testing depicted "the cartridge cases he ejected out to the right and to the rear, landing on the surface and then you may see a bounce and rolling of the fired cartridge cases." 364 at 13.

Mr. Styers reviewed crime scene diagrams which showed the shell casings locations after David Alexis was killed and was asked for his opinion where Defendant Carballosa was likely to have been standing at the time he fired those shots: "He would have to be standing north of the fired cartridge cases because the

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

cartridge case cannot, ejected to the right and rear, you [sic] had to be close to the middle of the highway, the roadway, because of the pattern here."  DE 364 at 19.

Mr. Styers had read Ms. Acevedo's deposition which said that "she saw the man in the middle of the street holding the gun firing five shots as she approached her car," and testified that was consistent with his opinion where Carballosa would have been standing given the casing locations from his pistol."  DE 364 at 20. Plaintiff's Exhibit 1 in evidence is the police sketch showing the location of Mr. Alexis' pistol on the south side of the street near the pattern of shell casings, and his body on the other (north) side of the street; that exhibit is reproduced here:



Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

The gun owned by David Alexis found at the scene is depicted in the photographs taken by police to be "within that pattern itself of ejected fired cartridge cases" which came from Defendant Carballosa's pistol. DE 364 at 20. Mr. Styers explained that the location of David Alexis' pistol within that pattern of Defendant Carballosa's ejected cartridge casings meant "that this gun would have been behind and to the right of Officer Carballosa as he fired his gun." *Id.*

Several months after the fatal incident, Defendant Carballosa provided a sworn statement to police in which he said he saw Mr. Alexis' gun "near the body" after he shot him. DE 364 at 19. That statement was untrue. DE 364 at 20. Later, Defendant Carballosa said that David Alexis' pistol "was on the north side of the highway," which also was not true. DE 364 at 21. He also provided a third conflicting account of the location where David Alexis' pistol was found, stating that "it was in the middle of the roadway." *Id.*

Because of the great distance between David Alexis' body and the location of his pistol, the parties disagreed on how the gun got there. It was Plaintiff's position that the gun could not have been thrown by Mr. Alexis to its resting point because of the lack of scratches or other physical damage to it. DE 364 at 22. Mr. Styers' investigation into the mechanism of the pistol and its condition included his

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

examination for "damage to the firearm itself other than normal wear and tear, look[ing] for physical evidence that may be adhering to it or attached to it." *Id.*

Mr. Styers was asked about the police department's examination of the gun reflected in its investigation and testified that there was no reported damage to that gun other than normal wear and tear. DE 364 at 202. Mr. Styers was handed the pistol inside a plastic bag for his identification. DE 364 at 23. The gun had been in the possession of Judge Moreno prior to the time that it was given to Mr. Styers during his testimony. DE 364 at 22.

On cross-examination, Mr. Styers was asked whether he agreed with an abstract of a scholarly article entitled "Fired Cartridge Case, Ejection Patterns from Semi-Automatic Firearms." DE 364 at 29. Mr. Styers testified that he did not disagree with statements in that abstract which reflected "a significant inconsistency of the spent cartridge case ejection locations that occurred across test positions even when several factors, including firearm type, firearm position, and ammunition were accounted for. Of the over 7,000 bullets fired, there were over 25% of the spent cartridge casing landed somewhere other than to the right and rear where it is commonly accepted that they should land." DE 364 at 30. Mr. Styers testified that there were a number of factors which could affect the location of the spent shell casings, including the manner in which " a gun is being held, whether it's being held

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

straight up or tilted . . . the stance of a shooter, whether they're bending their legs or standing straight up . . . if the shooter is moving a little bit or not . . . how fast the gun is being fired, . . . [and] the surface on which these casings are landing," among other things.  DE 364 at 31.

Even though Judge Moreno had precluded the Plaintiff from asking Mr. Styers about his testing of Defendant Carballosa's pistol using something he called the "off hand" method, defense counsel asked him about those tests on cross examination in order to impugn his integrity as an expert.  DE 364 at 35.  Mr. Styers "conducted two methods of test shooting," the first of which in which he shot from a "tripod," and the other (the "off hand method") in which he held the pistol in his hands at the same height "where he allegedly said how he was holding the firearm and the height of the firearm from the ground itself." *Id*.

Mr. Styers was impeached with the fact that his test firing of the pistol resulted in some of the shell casings ending up in locations other than to the right and rear. DE 364 at 46.  Mr. Styers testified that Mr. Alexis and Defendant Carballosa were standing "at least three to four feet apart from each other" when the Defendant killed him, based upon the fact that inspection of Mr. Alexis' clothing did not reveal "any partially burned or unburned gunpowder on the clothing."  DE 364 at 48.

Mr. Styers was asked for his opinion whether Mr. Alexis was holding his gun at the time Detective Carballosa shot him and responded: "I'd say it was unlikely he was holding the firearm itself . . . based upon the ejection pattern, along with Ms. Acevedo's testimony . . . where she states she saw a man in the middle of the street shooting at another person."  DE 364 at 49.  When asked if it was possible "that Alexis was holding his gun," and whether "it's possible that Alexis dropped—let go of his gun as he is being shot," Mr. Styers declined to render an opinion, stating: "I am not an expert in body mechanics."  DE 364 at 50.

Defense counsel attempted to get Mr. Styers to agree that it was possible David Alexis was holding the gun when Defendant Carballosa shot him, and conceded that "[i]t could have been dropped or placed there," but testified: "there's no evidence of that being dropped, that firearm itself."  DE 364 at 54.  He based that opinion in part upon the fact "based on a lack of damage to the gun."  *Id.*

Defense counsel attempted to get Mr. Styers to agree that photographs of David Alexis' pistol depicted markings "on the high points of this gun," consistent with it being thrown or dropped onto the street.  DE 364 at 56.  However, Mr. Styers responded: "I can't see any damage."  *Id.* He did see "something white there, but that's not damaged."  *Id.* When shown a different picture, Mr. Styers persisted that "it's still not damaged. It's white, something white there on those two items, not

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

damage. Damage is when something has been stressed, something has been broken, or something has been—an indentation to it, that's being damaged." *Id.* Defense counsel made the point with Mr. Styers that he did not purchase another pistol of a similar model and drop it onto the street surface to see if it sustained damage. DE 364 at 27. Police investigators who examined the gun did not report any damage to it. DE 364 at 60.

The Plaintiff called as an expert witness Dr. John Marraccini, M.D. R. 364 at 78. Dr. Marraccini attended medical school at Harvard, and became board certified in "three separate areas of pathology." They are anatomic pathology, clinical pathology, and forensic pathology. DE 364 at 79. Dr. Marraccini worked for the Dade County Medical Examiner's office and "worked for approximately ten years in the Palm Beach Medical Examiner's office . . . where [he] performed about 4,000 autopsies." DE 364 at 80. He is published in areas including forensic pathology. *Id*.

One thing Dr. Marraccini was retained to do was to render an opinion regarding "the positioning of Mr. Alexis' body as he's being shot five times." DE 364 at 88. Dr. Marraccini testified that photographs of Mr. Alexis' body following the shooting, including exhibit 10, depicted gunshot wounds "consistent with back to front direction." DE 364 at 89. Dr. Marraccini was asked whether the medical

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

examiner's file reflected any evidence of blood being in the street where the Defendant contended Mr. Alexis was standing during the encounter with Defendant and he testified that "originally Dr. Lew's [the defendant's expert witness and the medical examiner] said she saw something red on the road, but later on she said she couldn't really identify that as blood," and Dr. Marraccini testified that no blood was "noted on the official report." DE 364 at 93. No fingerprints were found on his gun. DE 364 at 93.

Dr. Marraccini was testified about the location of David Alexis' gun on the police sketch showing it in the street, and he testified that "[i]t's just in the wrong place." DE 364 at 94. When asked what he meant by "the wrong place," Dr. Marraccini explained:

> Well, I mean the gun is in the wrong place because it shouldn't be sitting in the midst of the ejected casings [from Defendant Carballosa's gun]. It should be out front because obviously the victim is out in front and the gun [being shot by Defendant Carballosa] is kicking ejected casings back and to the right. So the location of the firearm at the scene midst the ejected casings was a matter of immediate concern when I was analyzing this case.

DE 364 at 94.

Dr. Marraccini had participated with Plaintiff's expert Mr. Styers in setting up the shell casing ejection pattern experiment that Mr. Styers had testified about. DE 364 at 101. On cross examination Dr. Marraccini testified as to the differences in

27

the conditions on the day he and Mr. Styers performed the testing from the night of the fatal shooting noting that one difference was "it's daytime instead of nighttime . . . another difference would be . . . [that the street where Mr. Alexis was killed was] a mixture of hard rock and asphalt, [but] we had was a more uniform surface [where the testing was performed at the police shooting range]." DE 364 at 104. The third difference was "the issue of wind. The wind was blowing harder . . . during the day of the test than it was on the night in question. So to compensate for that, [Mr. Styers and Dr. Marraccini] moved [their analysis] to the right because the range has side booms as well as a berm in front," allowing the testers to "compensate by moving to an area where the wind was not affecting the sheet." DE 364 at 104.

Dr. Marraccini was asked whether another difference from the actual shooting scene was that Mr. Alexis was shorter than Dr. Marraccini and Mr. Styers; Dr. Marraccini testified that "the compensation is to bend your legs so that you can discharge the firearm in a manner approximate to what's described in the depositional statements." DE 364 at 107. When being asked to agree that the differences in conditions might result in the "wrong information coming out," Dr. Marraccini said: "That's true, but even officer Carballosa agrees that the ejection pattern is backwards and to the right, and none of that is changed by the individual measurement provided at the scene or at the range." DE 364 at 108.

Dr. Marraccini was cross examined about his testimony concerning the bullet wounds reflecting back-to-front trajectories.  DE 364 at 119.  The witness agreed that the wound labeled on his illustration as "gunshot wound B," was consistent with it being the first wound and reflecting a front-to-back trajectory.  DE 364 at 119. When asked whether that gunshot wound B was "the first gunshot wound that Mr. Alexis sustained," Dr. Marraccini testified that it was probable "because a person isn't going to turn into gunfire, right? More likely than not, Mr. Alexis received the first gunshot wound front to back and then turned, received the cluster, 1, 2, 3, down the side left flank, then the last one on the top of the left shoulder."  DE 364 at 120.

Other pertinent facts are set forth in the applicable argument sections, below, in order to place them in context with the issues being raised in this appeal.

### D. <u>Scope or Standard of Review</u>

The standard of review applicable to the evidentiary rulings are primarily whether the district court abused its discretion.

The standard of review of the district court's blanket refusal to permit litigants to use portions of the opposing party's deposition during her case-in-chief, being a violation of the Rules of Civil Procedure, should be *de novo* because it is a misapplication of law, not an exercise of discretion.

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

## SUMMARY OF THE ARGUMENT

The district court committed reversible error by permitting the defense expert pathologist, Dr. Emma Lew, to give previously-undisclosed testimony outside her field of expertise on the determinative issue of how Mr. Alexis' pistol came to be located more than twenty feet away from Mr. Alexis.  Without having disclosed her opinion before trial, Defendant elicited from Dr. Lew the surprise opinion that Mr. Alexis' arm must have jutted forward when he was struck by one of the bullets, hurling the pistol far enough away to end up behind the pattern of ejected shell casings shot by Defendant Carballosa.  Dr. Lew had previously denied any opinion about that subject and admitted in her testimony that it was based upon speculation. Her testimony was framed in the form of possibilities, not reasonable scientific probabilities and was thus inadmissible.

The Plaintiff was unfairly prejudiced by the district court's ruling excluding from evidence David Alexis' pistol.  The experts on both sides agreed that a firearm tossed twenty feet on hard pavement would have markings on it so indicating but they disagreed whether the pistol itself showed such markings. The jury should have been allowed to examine the firearm and decide that question of fact themselves. The only basis for the district court's ruling was that the pistol had not been listed as an exhibit by the Plaintiff. However it had been listed as an exhibit by the Defendant,

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

and Judge Moreno had ruled at the calendar call that exhibits listed by one party did not need to be listed again by the other party to be admissible.

The district court committed reversible error by denying Plaintiff's motion in limine and allowing introduction of testimony that the decedent had previously brandished a pistol and aimed it at his then-girlfriend in a threatening manner. That evidence was highly prejudicial and inadmissible under Fed. R. Civ. Evid. 404(b). It could only have been introduced for the purpose of sharing David Alexis' propensity to burnish a firearm or his bad character. The evidence was not relevant to any other contested issue because it was uncontroverted that Mr. Alexis owned a firearm and carried it with him. Defendant Carballosa did not know anything about David Alexis before the night of the fatal encounter, so his prior history was not relevant to the Defendant's mental state.

The district court reversibly erred in precluding Plaintiff from playing portions of the Defendant's videotaped deposition during Plaintiff's case-in-chief and in disallowing Plaintiff from being able to call the Defendant as an adverse witness and asking him leading questions on direct examination. Judge Moreno's blanket rule forbidding use of a party's deposition violated Fed. R. Civ. P. 32(a)(3), which permits an adverse party to use a deposition "for any purpose." Further, the district court's refusal to allow Plaintiff to call Defendant Carballosa as an adverse

witness live a trial without waiving the right to cross-examine him when recalled during the Defendant's case unfairly denied Plaintiff an opportunity to demonstrate to the jury the Defendant's demeanor while being cross-examined, which is the most effective interrogation technique for determining the truth.

**ARGUMENT**

**I.**

**THE DISTRICT COURT ABUSED ITS DISCRETION IN PERMITTING DEFENSE EXPERT EMMA LEW TO PROVIDE UNDISCLOSED TESTIMONY AND REFUSED TO GIVE A REQUESTED CURATIVE INSTRUCTION**

The district court erroneously denied Plaintiff's motion for new trial based on objections to testimony from defense pathologist, Dr. Emma Lew. Dr. Lew gave outcome-determinative testimony that was neither disclosed nor proper expert testimony as a matter of law. The district court, after long consideration, ultimately denied Plaintiff's requested curative instruction, even though it repeatedly stated that it was willing to grant a mistrial as a result. *See* Exhibit 1 at 51:14 (Court stating that a mistrial "seems to be the perfect cure."); 33:18-19 (Court stating "you're entitled to a mistrial if you wanted to and you don't want it.); *id*. at 10:21; *id*. at 73:18-20. Lew's prejudicial testimony, which she admitted was

32

speculation, also served as an improper comment on Carballosa's credibility and resulted in trial by ambush on multiple fronts.

Dr. Lew's surprise testimony was the only evidence supporting Defendant's position on the critical issue of how Mr. Alexis' gun ended up where it was found, as none of the other witnesses, lay or expert, had any explanation for that puzzle. In affirming the denial of qualified immunity for the second time in this case, this court observed:

> Notably, Defendant never said that Alexis threw the gun or offered any explanation how Alexis's gun happened to find itself near where Defendant would have been standing when Defendant shot Alexis. Further . . . the magistrate judge noted that Defendant's various accounts were "inconsistent and contradictory" concerning "when, where, and how" Defendant had perceived the possession of a gun by Alexis, as well as other material facts concerning Defendant's encounter with Alexis.

*Mighty v. Miami-Dade County,* 728 F. App'x. 974, 977 @ n. 2 (11th Cir. 2018)

The district court repeatedly and correctly stated that the crucial issue in this case was whether Mr. Alexis had a gun pointed at Carballosa, but then admitted speculation by an expert purportedly explaining one of the most important facts regarding that issue. In 2012, Carballosa stated that Mr. Alexis' gun was found "a couple feet" from Mr. Alexis, who was on the north side of the road, yet forensic evidence located it ***over twenty (20) feet away*** on the south side, near Carballosa's

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

truck.  Plaintiff's Exhibit 2 in evidence illustrated where the gun was found, among

the spent shell cases from Defendant's gun, and on the other side of the street from

David Alexis' body:



Thus, Lew's new "expert opinion" during trial was Defendant's <u>only</u>

explanation for this key piece of evidence: how Mr. Alexis' gun got there, an

issue that no other expert had an opinion on – ***including Lew*** – who had previously

confirmed that she had no opinion on that subject. Exhibit 3 at 83:6- 19 and 84:7-

10. Moreover, all experts agreed – it was undisputed – that the spent shell casings

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

from Carballosa's gun ejected to the right and to the rear, placing him in front of and to the left of the ejected casings that night he shot, near the middle of the road. Thus, Mr. Alexis' gun – that Carballosa *eventually alleged* was in front being pointed *at him* – was *behind* Carballosa. Credibility, an issue in all cases, was paramount to the issue identified by this Court: whether Mr. Alexis had a gun pointed at Carballosa.

Lew's non-disclosed speculation vouched for Carballosa's latest version of events without any scientific basis to speak of and included, at Defense Counsel's request, Lew's own dramatization of *random forward twisting motions* allegedly by Mr. Alexis to "explain" his gun's location. Unnervingly, Carballosa testified that Mr. Alexis was *backing away* in a left-sided stance, thus towards his home (of five bullets, one struck Mr. Alexis under his left armpit, one through his back, and three to his left side). Hence, Lew's guesswork based on <u>her own</u> random twisting – not Mr. Alexis' – is her own interpretation of how Mr. Alexis' life was ending as he endured the pain of being fatally shot.

As noted above, Dr. Lew affirmatively denied having an "expert opinion" on the location of Mr. Alexis' gun. Her Expert Report and Initial Disclosures pursuant to Fed. R. Civ. P. 26(a) likewise reveal the same: she had no expert opinion on the matter.

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

A party's failure to provide information or identify a witness required by Fed. R. Civ. P. 26(a) or (e) precludes the use of that information or witness to supply evidence at trial *unless* the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). Defendant's failure to inform Plaintiff or this Court that Lew would be changing her testimony *until* she was testifying *in front of the jurors* was not substantially justified because Defendant had *over two and a half years to supplement Lew's Expert Report and never did. See Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (noting that discovery rules are designed to prevent surprise and compliance with the requirements of Rule 26 is not merely aspirational). Moreover, it was not harmless error because the testimony at issue is not proper expert testimony as a matter of law. Finally, while Fed. R. Civ. P. 37(c)(1) provides that "[i]n addition to or instead of this sanction, the court" may impose "other appropriate sanctions," there were *no sanctions* for Defendant's failure here, and the significant weight of the prejudice was encouraged through closing argument.

Evidentiary rulings are reviewed for abuse of discretion. The Circuit Court defers to "the district court's evidentiary ruling unless that ruling is manifestly erroneous." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003) (internal quotation marks omitted); *see Adams v. Austal U.S.A.,*

*LLC*, 754 F.3d 1240, 1248 (11th Cir. 2014) (noting that an abuse of discretion only occurs when the district court relies on a clearly erroneous finding of fact or an errant conclusion of law, or improperly applies the law to the facts).

This Court's evidentiary ruling regarding Lew's at-issue speculation was manifestly erroneous because it improperly applied the law to the facts. Lew herself ***admitted*** that her explanation was only "possible" during the voir dire at trial, and thus not proper expert testimony as a matter of law:

> Q. ***So you would be speculating*** on how far that gun would go, under your theory, based upon your assumption that Mr.
>
> Alexis didn't intend to throw the gun, but the body movement as he came around, ***maybe he could have thrown the gun a couple of feet*** you said, ***you don't even know where he is****?*
>
> A. ***That is correct.***
>
> \*   \*   \*
>
> Q. And it's also consistent that Mr. Alexis just dropped the gun there when he was told to show his hand. That's consistent, too, isn't it?
>
> A. ***That's possible.***
>
> Q. Right. There are a lot of things possible. ***A lot of possible explanations for why that gun is there, correct?***
>
> A. Yes.

DE 365 at 293 (emphasis added). Thus, the court's ruling to nevertheless admit what is not admissible concerning an outcome-determinative key issue was an

abuse of discretion that substantially biased Plaintiff.

Admitting Lew's at-issue (and non-disclosed) speculation, without providing Plaintiff's requested curative instruction, was to undo *Daubert* and rewrite Fed. R. Evid. 702, and all the case law interpreting same. Most revealing here is that Judge Moreno was willing to grant a mistrial, but then denied Plaintiff's curative instruction, preserving all harm, and now a new trial is necessary. Lew's speculation was violative of the limits proscribed by Fed. R. Evid. 702 and *Daubert*, such as to devoid them of any meaning. *See also Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 297 (D.D.C. 2018) (noting the decision to receive expert testimony **cannot be simply tossed off to the jury under a 'let it all in' philosophy**)(emphasis added)(internal citation omitted)(internal quotation marks omitted).

Yet Lew's extremely prejudicial speculation stood alone; no one else could explain how Mr. Alexis' gun ended up on the south side of the road, despite Defendant seeking to elicit such testimony from Plaintiff's experts during cross-examination, over Plaintiff's objection. However, this Circuit has long understood that "*Daubert* requires that trial courts act as 'gatekeepers' **to ensure that speculative, unreliable expert testimony does not reach the jury**." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) (emphasis added);

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

*see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) (holding that the trial judge ***must ensure*** that any and all scientific testimony or evidence admitted is not only relevant, but reliable) (emphasis added). Unsurprisingly, the proponent of expert testimony has the burden of demonstrating proper foundation, but without proper foundation for Lew's speculation, Defendant chose ambush. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

This Circuit also has a "rigorous three-part inquiry" wherein trial courts must consider (1) the expert's ***qualifications*** to testify on the matters; (2) the ***reliability of the methodology***; and, (3) the ***helpfulness*** of the expert's testimony to the trier of fact – not to the party proffering the testimony – through the application of specialized expertise. *United States v. Frazier*, 387 F.3d 1244, 1260-62 (11th Cir. 2004) (also noting expert testimony is admissible in assisting the trier of fact if it concerns matters that are beyond the understanding of the average lay person); s*ee* Fed. R. Evid. 702 (explaining an expert may testify if her scientific, technical, or other specialized knowledge will help the trier of fact; the testimony is based on sufficient facts or data; it is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts).

Given the conjunctive nature of the inquiry, qualifications alone are

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

insufficient as a matter of law, though surely, Lew is not qualified to testify as to how Mr. Alexis' gun – which Carballosa did not see as he repeatedly shot him – ended up far, far away. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendments ("[t]he trial court's gatekeeping function requires more than simply taking the expert's word for it.") (internal quotation marks omitted); *Daubert* at 590 (explaining that an expert's "knowledge" connotes more than unsupported speculation). Indeed, there was ***no methodology apart from Lew's own interpretation of Mr. Alexis' pain in death***.

Instead of helping, Lew's testimony misled the triers of fact as she does not, did not, and cannot know how Mr. Alexis gun got there. Accordingly, ***Lew's testimony failed every step*** of *Daubert*, every step of Rule 702, and every step of this Circuit's rigorous three-part inquiry, ***as a matter of law***. Lew's speculation is contrary to what is expected of an expert, and the denial of Plaintiff's requested curative instruction was clear error.

The district court's denial of Plaintiff's requested curative instruction gave the jury the incorrect impression that Lew's singular speculation on this key issue was proper expert opinion. Accordingly the jury was permitted – and repeatedly encouraged ***through closing argument*** – to value Lew's speculation, and to give it high value. This Circuit has further cautioned that "expert testimony may be

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Frazier* at 1263.

Notwithstanding the potential to mislead or confuse, there was no probative value to Lew's speculation because she does not know how Mr. Alexis' gun got there. The resultant unfair prejudice was further compounded by the inherent arrangement of the testimony, mainly that Plaintiff's experts had already testified and left. Cross-examination alone was wholly inadequate at un-ringing the bell once the talismanic significance had been bestowed, and Lew's speculation ought to have been, at a minimum, stricken for considerations in Fed. R. Evid. 403. To be sure, if cross-examination were the adequate remedy for improper expert testimony as a matter of law, then there would be no need for Fed. R. Evid. 702, *Daubert*, the required initial expert disclosures, or the duty to supplement same.

In addition to the prejudice discussed, Lew's speculation – from which she opined that the evidence in this case is consistent with Carballosa's (most recent) version of events – is an improper comment on his credibility in that pure speculation may not bolster such a conclusion because ***it is not proper evidence***. The risk of misleading the jury through Lew is fundamentally pronounced in that Carballosa's most advantageous version of events – which ***differs materially*** from

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

his Sworn Statement in 2012 – was the foundation for each of Defendant's expert witnesses' opinions. *See United States v. Hamaker*, 455 F.3d 1316, 1334 (11th Cir. 2006) (noting that witness credibility is the sole province of the jury) (internal citation omitted) (internal quotation marks omitted). Thus, Lew's speculation that apparently helped form the basis of her opinion that Carballosa's (most current) version of events is consistent with the evidence is a comment, and a prominent rubberstamp at that, on his credibility disguised as expert opinion, interfering with the jury's obligation and the jury's alone.

## II.

### THE TRIAL COURT ERRONEOUSLY ALLOWED MS. ACEVEDO'S TESTIMONY ABOUT MR. ALEXIS' PRIOR BAD ACT OF POINTING A GUN AT HER

The district court committed harmful error by denying Plaintiff's motion in limine seeking to preclude evidence of David Alexis' prior bad acts, including an event in which he pulled a pistol and pointed it in a threatening manner at his then-girlfriend, Yalyasher Acevedo. Ms. Acevedo, an eyewitness (from a distance) to the shooting was permitted to testify that Mr. Alexis had aimed his pistol at her as she sat in her car, causing her fear of being shot. Such evidence was highly prejudicial and inadmissible under Fed. R. Evid. 404(b).

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

Such evidence is inadmissible because it is improper character evidence under Federal Rule of Evidence 404(b). "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1)(emphasis added). To be admissible under Rule 404(b), evidence of a crime, wrong, or other act must: (1) be relevant to an issue other than the defendant's character; (2) be proven sufficiently to allow a jury to find that the defendant committed the extrinsic act; and (3) possess probative value that is not substantially outweighed by undue prejudice under Rule 403. *U.S. v. Farmer*, 553 F. App'x. 901, 902–03 (11th Cir. 2014) (*citing U.S. v. Sanders*, 668 F.3d 1298, 1314 (11th Cir. 2012)) (internal quotations omitted).

"In reality, the admissibility of 404(b) evidence stands and falls on the basis of its relevance to the elements of the charged crime, and nothing else." *See U.S. v. Baker*, 432 F.3d 1189, 1207 n. 13 (11th Cir. 2005). Federal Rule of Evidence 401 defines relevant evidence as "any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." If evidence is not relevant, it is inadmissible. Fed. R. Evid. 402. Here, Carballosa testified that the victim was not wanted or suspected of crime at the time of the shooting, and that he

did not know anything about the victim, and therefore, any prior bad act or alleged crime is irrelevant.

The party offering evidence under Rule 404(b) "bears the burden of showing that the proffered evidence is relevant to an issue other than character." *Williams v. Asplundh Tree Expert Co.,* No. 3:05-cv-479-J-33MCR, 2006 U.S. Dist. LEXIS 73238 at *6 (M.D. Fla. Oct. 6, 2006) (quoting *U.S. v. Youts*, 229 F.3d 1312, 1317 (10th Cir. 2000)). "The proponent of the evidence must articulate precisely the evidentiary hypothesis by which a fact consequence may be inferred from the other acts evidence." *Id*. Evidence of the victim's alleged prior bad acts would fail to meet the 404(b) test for two reasons: (1) the extrinsic evidence is not relevant as to whether Carballosa was objectively reasonable in shooting the victim because it is undisputed that Carballosa knew nothing about the David Alexis at the time Carballosa exited his unmarked vehicle and shot him; 2) any probative value that of the alleged bad act evidence set forth above may have would be greatly outweighed by undue prejudice to the Plaintiff.

The first prong of this Rule 404(b) analysis requires that prior bad act evidence be relevant to an issue other than the defendant's character. Carballosa does not claim as a defense that he shot the victim because of his history of domestic violence or his alleged propensity for violence, but rather because he allegedly believed that the

44

victim was armed. Evidence of alleged domestic abuse by the victim fails this first prong because allegations of domestic abuse is entirely irrelevant and of no consequence to the determination of the issue of whether Carballosa acted reasonably when he shot and killed the victim because Carballosa had no knowledge of any allegations of domestic violence.

Pulling a gun on a girlfriend is like spousal abuse, evidence of which is irrelevant in matters where there the spousal abuse is not related to the underlying claim. *U.S. v. Hands*, 184 F.3d 1322, 1324 (11th Cir. 1999). In Hands, this Court held that it was an abuse of discretion to permit evidence of the spousal abuse because it was irrelevant and unduly prejudicial and because there was no potential connection between the domestic violence claims and the charges the government brought against Eddie Hands. *See id*. at 1326; accord, *U.S. v. Henderson*, 409 F.3d 1293, 1298 (11th Cir. 2005) (finding evidence regarding domestic dispute was irrelevant to charges against defendant for use of excessive force under color of law and falsifying an incident report). Evidence of prior crimes or alleged bad acts, including domestic abuse, is also irrelevant and inadmissible under Rule 404(b) to show that the victim had bad character, a propensity for violence, or a propensity to commit a crime. *U.S. v. Green*, 873 F.3d 846, 857 (11th Cir. 2017); *see also Valdes v. Miami-Dade Cnty*, No. 12-22426-CIV- MORENO/O'SULLIVAN, 2015 WL

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

7253045 at *100 (S.D. Fla. Nov. 117, 2015) (granting motion in limine to exclude evidence of victim's prior arrests in excessive force case); *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 544-45 (E.D.N.Y. 2011) (victim's prior conviction inadmissible because it may "mislead or prejudice the jury to infer that plaintiff has a propensity for violence and to assume that the plaintiff engaged in assaultive behavior and that the degree of force used by defendants was reasonable").

In the instant case, the jury was to evaluate Carballosa's decision to use deadly force based on what he knew at the time and what an objectively reasonable officer with that knowledge would have perceived and done under the circumstances. Any evidence outside the time frame of the shooting and outside Carballosa's knowledge is irrelevant and inadmissible. *See, e.g., MacMillian v. Roddenberry*, 432 Fed. Appx. 890, 896 (11th Cir. 2011) (admitting limited evidence of victim's prior bad acts in a §1983 claim as relevant to police officer's state of mind only because police officers actually knew the victim and had prior knowledge of his history); *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997); *Rubalcava v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (affirming admission of "limited" evidence of plaintiff's prior criminal history only because it was known to the officers at the time of the incident).

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

Here, evidence regarding the victim's pointing a pistol at Ms. Acevedo is irrelevant as to whether Carballosa acted as an objectively reasonable officer at the time because these allegations were unknown to Carballosa and occurred months outside of the time frame of the shooting. It is undisputed that at the time of the incident the victim was not wanted or suspected of any crime; the victim was not under any surveillance; and Carballosa did not know the victim and had not investigated the victim prior to making the decision to shoot and kill him. Accordingly, these alleged prior bad acts cannot be utilized to show that the victim had a propensity for violence.

This evidence also fails the third prong of the 404(b) analysis because the probative value of this evidence is substantially outweighed by the danger of undue prejudice. Fed. R. Evid. 403. On multiple occasions the Eleventh Circuit has held that evidence of spousal abuse is "particularly likely to incite a jury to an irrational decision," and should, therefore, not be admitted at trial. *See Hands*, 184 F.3d at 1328 ("spousal abuse falls into this category"); *Henderson*, 409 F.3d at 1298 ("evidence about [defendant's] domestic dispute posed a disproportionate risk of unfairly inflaming the jury's emotions and sidetracking the trial regarding the irrelevant question of whether or not [defendant] engaged in spousal abuse."); *United States v. Covington*, 565 F.3d 1336, 1342 (11th Cir. 2009) ("Obviously

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

domestic violence, when irrelevant to the charge at hand, has great potential to incite unfair prejudice.") (internal quotation marks and citation omitted).

The prejudice that would result in admitting the victim's alleged act of pointing a gun at Ms. Acevedo substantially outweighs any alleged minimal probative value of this evidence. Accordingly, these prejudicial effects substantially outweigh any minimal probative value this evidence may have had, and this Court should reverse for a new trial.

## III.

## THE DISTRICT COURT ABUSED ITS DISCRETION IN EXCLUDING FROM EVIDENCE DAVID ALEXIS' PISTOL

A key issue in this case was whether David Alexis' pistol had been hurled twenty feet from the point where he was allegedly holding it when he was shot to the place it appeared on the pavement surrounded by the spent shell casings from Defendant Carballosa's gun. Plaintiff's expert testimony established that the gun would have scrapes or other markings on it, had it been tossed across the pavement, as opposed to being simply dropped to ground near Mr. Alexis, if he indeed had been holding it. Defendant's expert witness saw markings on the pistol which he attributes to it impacting the pavement, but Plaintiff's expert disagreed. The best evidence on that point would surely have been the gun itself, which the jury could

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

have examined during deliberations to arrive at a resolution concerning that conflict. Although the gun was seen by the jury from a distance, the Springfield pistol was shown at a distance as it was being held by the attorneys and experts but was excluded from evidence when formally offered by the Plaintiff.  DE 365 at 61.  The only voices for the trial court's sua sponte exclusion of the pistol from evidence was that the pistol had not been assigned an exhibit number.  *Id*.  When offered by Plaintiff's counsel, the court asked: "does it have a number?"  DE 365 at 61.  When Plaintiff's counsel responded that he could not "honestly remember" whether the pistol had been assigned a number, Judge Moreno consulted the exhibit list and ruled: "It did not.  It does not come in. Anything else from the Plaintiff?"  DE 365 at 61.  That was an abuse of discretion because the pistol had been sufficiently identified as an exhibit to be introduced at trial, and was key evidence in the case.

Defendant's firearms expert Alexander Jason testified that he examined photos of the Springfield pistol and examined the weapon himself in arriving at his opinions.  During his testimony Mr. Jason was shown photographs of the gun and testified that it looked like a "gun that's slid on asphalt," explaining as follows:

Q. Where does it look like it slid on asphalt?

A. On the slide stop, which I'll circle, and on the take-down lever, this little object here, because you see that, if you look at that,

you'll see some white material or light shiny material on both of those objects.

Now, what's significant is that those two little items are the high point on that side of the gun. I took this gun and rested it on its left side and almost none of the gun touches the surface like on this desk or cabinet. Only the high points do. They're like little feet that stick out.

So if the gun slid along the ground and picked up some of this dust or little particulate from the stones, that's where they would collect. You wouldn't see it on the rest of the gun. You'd see it on the high points, because those are the only pieces touching the surface.

DE 365 at 210-11.

The exclusion of the Springfield pistol from evidence was an abuse of discretion because the gun had been identified by the Defendant as a trial exhibit. Judge Moreno had ruled that—when one party had listed evidence and given it an exhibit number—the opposing party did not have to separately list the exhibit for it to be subject to introduction into evidence. At the calendar call where the parties were directed to submit their final exhibit lists and the names of the actual trial witnesses were disclosed, the subject of numbering exhibits was dealt with as follows:

THE COURT: I know [that the parties have discussed their exhibits with each other]. But now what you need to do is you need to type them with the numbers so I can look at them. No duplicates. So if someone is using—*if the Plaintiff already has listed an exhibit, we don't need to have a defense exhibit*. Okay? Unless the Plaintiff doesn't use it, then you give it a number, not a letter. . . .

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

DE 307 at 37 (emphasis added).

The Defendant listed the Springfield pistol as an exhibit and identified it by number in the Index of Defendant's Trial Exhibits and Certificate of Compliance filed on October 3, 2019.  DE 336.  The introductory paragraph to that list of exhibits explains how tangible physical evidence was being identified by number as follows: "Defendant, officer Miguel Carballosa, in compliance with the clerk's instructions, ECF No. 335), hereby files (a) an electronic version of each documentary exhibit offered or introduced into evidence and (b) a *digital photograph of each non-documentary physical exhibit offered or introduced into evidence."*  DE 336 at 1 (emphasis added).  Defense exhibit nos. 21 through 32 are all identified as "Picture of Springfield" and further identified by specific photograph ("jpg") numbers.  The listing of those photographs was not an indication that the Defendant was offering only the picture itself but was the Defendant's way of identifying the actual "physical exhibit offered or introduced" at the time of trial.  Thus, the "physical exhibit" of David Alexis' gun was listed by the Defendant and did not need to be listed again by the Plaintiff.

The jury was unfairly deprived of its best opportunity to resolve the conflicts between the experts' testimony on both sides about whether or not David Alexis' pistol looked like it had been tossed onto hard pavement, sliding across the asphalt

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

and sustaining markings consistent therewith.  That issue was the key to the case, so this Court should reverse and order a new trial.

**IV.**

**THE COURT ERRED IN PRECLUDING PLAINTIFF FROM INTRODUCING PORTIONS OF DEFENDANT CARBALLOSA'S VIDEOTAPED DEPOSITION AND THEN FORBIDDING HER FROM ASKING HIM LEADING QUESTIONS DURING HER CASE-IN-CHIEF, WHICH TAKEN TOGETHER, WENT <u>BEYOND THE EXERCISE OF REASONABLE CONTROL</u>**

Two other court rulings, taken together, adversely impacted Plaintiff's right to develop and present her case-in-chief as she determined was most effective for determining the truth.  First, Plaintiff was precluded from showing designated portions of Defendant Carballosa's videotaped deposition, which is allowed under Fed. R. Civ. P. 32(a)(3), that provides, "an adverse party ***may use for any purpose*** the deposition of a ***party***," standing in contrast to subsection (a)(4) directly underneath it, which first requires a finding by the court. (emphasis added).

Here, Plaintiff sought to introduce portions of Carballosa's videotaped deposition in order to ***illustrate his demeanor*** to the jurors, who were charged with judging his credibility, but was denied the opportunity because Carballosa would be present at trial. Then, Plaintiff was also not allowed to ask Carballosa leading questions during her case- in-chief consistent with Fed. R. Evid. 611(c), which

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

provides that ordinarily, the court should allow leading questions "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." In so ruling, the Court noted that Carballosa would be called during his own case-in-chief and emphasized not wasting time.

While this Court has discretion to exercise reasonable control over the mode and order of examining witnesses under Fed. R. Evid. 611(a), the first consideration ranking above the three contained therein is that the court should exercise reasonable control so as to "make those procedures *effective for determining the truth*," Fed. R. Evid. 611(a)(1) (emphasis added). However, here the Court denied Plaintiff the opportunity to challenge – not just a hostile witness or a witness identified with an adverse party – but the opposing party (and only witness to the entire shooting) within her own case-in-chief. Prejudicial interference with Plaintiff's case-in-chief is not a form "reasonable control" contemplated by Fed. R. Evid. 611(a) and would necessarily detract from the strength of the adversarial system. Together, the two rulings, prohibiting Plaintiff from showing designated portions of Carballosa's videotaped deposition *that Defendant had not objected to* – and which is admissible as substantive evidence consistent with Fed. R. Evid. 801(d)(2), and not just for impeachment – *and* then precluding her from asking him leading questions during her case-in-chief,

Wasson & Associates, Chartered
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

unfortunately resulted in harmful error. Accordingly, Plaintiff had the right under the Federal Rules to demonstrate designated portions of Carballosa's videotaped deposition to the jury or to call Carballosa during her case-in-chief and ask him leading questions in Plaintiff's effort to illustrate his demeanor and reveal his credibility, and to do so in a manner effective for determining the truth.

## CONCLUSION

WHEREFORE, the Plaintiff having been unfairly prejudiced by the district court's arbitrary rulings, violation of the Federal Rules of Civil Procedure and Federal Rules of Evidence, the judgment in Defendant's favor should be reversed and this matter should be remanded for a new trial on all issues.

Respectfully submitted,

<table>
<tr><td>ROY D. WASSON<br>WASSON & ASSOCIATES, CHARTERED<br>Courthouse Plaza—Suite 600<br>28 West Flagler Street<br>Miami, FL 33130<br>(305) 372-5220 Telephone<br>roy@wassonandassociates.com</td><td>MARY MARGARET SCHNEIDER,<br>FRANK LABRADOR, PETER DEMAHY<br>DLD LAWYERS<br>806 Douglas Road, 12th Floor<br>Coral Gables, Florida 33134<br>(305) 443-4850 Telephone<br>mmschneider@dldlawyers.com<br>flabrador@dldlawyers.com<br>pdemahy@dldlawyers.com</td></tr>
</table>

Counsel for Plaintiff/Appellant

By: *s/Roy D. Wasson*
ROY D. WASSON
Florida Bar No. 332070

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing and an original and six paper copies have been dispatched to the clerk of court for delivery within three days on June 12, 2020.

By:    *s/Roy D. Wasson*
      ROY D. WASSON
      Florida Bar No. 332070

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that the foregoing brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B).  This brief contains 12,923 words.

By:    *s/Roy D. Wasson*
      ROY D. WASSON
      Florida Bar No. 332070

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com

# SERVICE LIST

**Counsel for Plaintiff/Appellant**
Mary Margaret Schneider
*mmschneider@dldlawyers.com*
Florida Bar Number: 614009
Frank L. Labrador
*flabrador@dldlawyers.com*
Florida Bar Number: 796980
Pete Demahy
*pdemahy@dldlawyers.com*
Florida Bar Number: 241822
DLD Lawyers
Douglas Entrance
806 S. Douglas Road, 12th Floor
Coral Gables, Florida 33134
(305) 443-4850 Telephone
(305) 443-5960 Facsimile

Roy D. Wasson
Florida Bar No. 332070
Wasson & Associates, Chartered
Co-counsel for Plaintiff/Appellee
Courthouse Plaza—Suite 600
28 West Flagler Street
Miami, Florida 33130
(305) 372-5220 Telephone
(305) 372-8067 Facsimile
*roy@wassonandassociates.com*
*e-service@wassonandassociates.com*

**Counsel for Defendants/Appellees**
Annery Pulgar Alfonso
*annery@miamidade.gov*
Florida Bar Number: 90854
Bernard Pastor
*pastor@miamidade.gov*
Florida Bar Number: 46582
Anita Viciana
*anita@miamidade.gov*
Florida Bar Number: 115838
Jennifer L. Hochstadt
*hochsta@miamidade.gov*
Florida Bar Number: 56035
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
(305) 375-5151 Telephone
(305) 375-5634 Facsimile

WASSON & ASSOCIATES, CHARTERED
28 West Flagler Street, Suite 600 • Miami, Florida 33130 • (305) 372-5220 Telephone
www.wassonandassociates.com