IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 19-15052

**TRUDY MIGHTY**,

Plaintiff/Appellant,

versus

**MIGUEL CARBALLOSA**,

Defendant/Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---

**ANSWER BRIEF OF DEFENDANT/APPELLEE MIGUEL CARBALLOSA**

ABIGAIL PRICE-WILLIAMS
MIAMI-DADE COUNTY ATTORNEY
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151
Facsimile: (305) 375-5611

Anita Viciana
Bernard Pastor
Jennifer L. Hochstadt
Assistant County Attorneys
Attorneys for Defendant/Appellee

TRUDY MIGHTY,

v.

MIGUEL CARBALLOSA.

_____/

## **CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant/Appellee certifies that the following persons and entities may have an interest in the outcome of this case:

1.     T.A., daughter of David N. Alexis

2.     Alfonso, Annery Pulgar, Assistant County Attorney

3.     Carballosa, Miguel, Defendant/Appellee

4.     Crosby, Shannon, Counsel for Plaintiff/Appellant

5.     DeMahy Labrador Drake Victor Rojas & Cabeza, Counsel for Plaintiff/Appellant

6.     DeMahy, Pedro L., Counsel for Plaintiff/Appellant

7.     Hochstadt, Jennifer L., Assistant County Attorney

8.     Labrador, Frank, Counsel for Plaintiff/Appellant

9.     Miami-Dade County, Defendant/Appellee

10.     Miami-Dade County Attorney's Office

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

TRUDY MIGHTY,

v.

MIGUEL CARBALLOSA.

_____/

    11.    Mighty, Trudy, Plaintiff/Appellant

    12.    Moreno, Hon. Federico A., United States District Judge

    13.    McAliley, Hon. Chris M., United States Magistrate Judge

    14.    O'Sullivan, Hon. John J., United States Magistrate Judge

    15.    Pastor, Bernard, Assistant County Attorney

    16.    Rosenthal, Oren, Assistant County Attorney

    17.    Schneider, Mary Margaret, Counsel for Plaintiff/Appellant

    18.    Viciana, Anita, Assistant County Attorney

    19.    Wasson, Roy D., Counsel for Appellant

    20.    Wasson & Associates, Chartered, Counsel for Appellant


                    _s/ Anita Viciana_____
                    Anita Viciana
                    Assistant County Attorney


C-2 of 2

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

CERTIFICATE OF INTERESTED PERSONS ........................................... C-1 of 2

TABLE OF CONTENTS ........................................................................... i

TABLE OF CITATIONS ........................................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ............................... 1

STATEMENT OF THE ISSUES ............................................................ 2

STATEMENT OF THE CASE ............................................................... 2

SUMMARY OF THE ARGUMENT ...................................................... 5

ARGUMENT ......................................................................................... 6

I.     PLAINTIFF IS NOT ENTITLED TO A NEW TRIAL ................................ 6

     A.     The Denial of Plaintiff's Motion for a New Trial Must Be Affirmed Because She Cannot Show the Verdict was Against the Great Weight of the Evidence ........................................... 6

     B.     The District Court Did Not Abuse its Discretion on Any Evidentiary Rulings ........................................................... 10

          1.     The District Court Did Not Abuse its Discretion in Admitting Dr. Lew's Testimony ............................................... 11

          2.     The District Court Did Not Abuse its Discretion in Admitting Ms. Acevedo's Testimony ...................................... 25

          3.     The District Court Did Not Abuse its Discretion in Excluding Alexis's Firearm, which Plaintiff Failed to List as a Trial Exhibit ........................................................... 28

i

## TABLE OF CONTENTS (cont'd)

**Page**

    4.    The District Court Did Not Abuse its Discretion in Exercising Reasonable Control Over the Mode and Order of Examining Witnesses and Presenting Evidence With Respect to Officer Carballosa's Testimony ............................................................................... 31

  C.    Plaintiff is Not Entitled to a New Trial Because Any Errors Below Were Harmless ......................................................... 35

  D.    Officer Carballosa is Entitled to Qualified Immunity ........................ 36

CONCLUSION ..................................................................... 39

CERTIFICATE OF COMPLIANCE ....................................... 40

CERTIFICATE OF SERVICE ............................................... 40

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## **TABLE OF CITATIONS**

**Cases**                                                                 **Page(s)**

*Access Now, Inc. v. Sw. Airlines Co.*,
    385 F.3d 1324 (11th Cir. 2004) ........................................................ 27, 30

*Acosta v. City & Cnty. of San Francisco*,
    83 F.3d 1143 (9th Cir. 1996) ............................................................... 36

*Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*,
    571 F.3d 1143 (11th Cir. 2009) ............................................................. 7

*Bank of the South v. Ft. Lauderdale Tech. College, Inc.*,
    48 F.R.D. 136 (E.D. La. 1969) ............................................................ 23

*Bearint ex rel. Bearint v. Dorell Juv. Group, Inc.*,
    389 F.3d 1339 (11th Cir. 2004) ........................................................... 19

*Beech Aircraft Corp. v. Rainey*,
    488 U.S. 153 (1988) ........................................................................... 19

*Cal. Ins. Co. v. Allen*,
    235 F.2d 178 (5th Cir. 1956) ............................................................... 19

*Chrysler Int'l Corp. v. Chemaly*,
    280 F.3d 1358 (11th Cir. 2002) ........................................................... 32

*Conway v. Chem. Leaman Tank Lines, Inc.*,
    610 F.2d 360 (5th Cir. 1980) ......................................................... 35, 36

*Crawford v. United States*,
    198 F.2d 976 (D.C. Cir. 1952) ............................................................ 19

*Frazell v. Flanigan*,
    102 F.3d 877 (7th Cir. 1996) ............................................................... 36

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## TABLE OF CITATIONS (cont'd)

<u>**Cases**</u>                                                                           <u>**Page(s)**</u>

*Ghee v. Marten Transp., Ltd.*,
   13-3922, 2014 WL 2871307 (3d Cir. June 25, 2014) .......................................... 7

*Graham v. Connor*,
   490 U.S. 386 (1989), *vacated on rehearing*,
   41 F.3d 1494 (11th Cir. 1995)............................................................................. 38

*Hardin v. Hayes*,
   52 F.3d 934 (11th Cir. 1995)............................................................................... 7

*Harrell v. Decatur County, Ga.*,
   22 F.3d 1570 (11th Cir. 1994).............................................................................. 38

*Hendrix v. Sterilite Corp.*,
   742 F. Supp. 2d 1277 (N.D. Ala. 2010) .............................................................. 24

*Hewitt v. B.F. Goodrich Co.*,
   732 F.2d 1554 (11th Cir. 1984)............................................................................ 6

*Iacobucci v. Boulter*,
   193 F.3d 14 (1st Cir. 1999) ................................................................................. 36

*Jaffe v. Bank of Am., N.A.*,
   395 F. App'x 583 (11th Cir. 2010)...................................................................... 34

*Jean-Baptiste v. Gutierrez*,
   627 F.3d 816 (11th Cir. 2010).............................................................................. 38

*Jones v. Illinois Cent. R. Co.*,
   617 F.3d 843 (6th Cir. 2010)............................................................................... 24

*Jones v. Otis Elevator Co.*,
   861 F.2d 655 (11th Cir. 1988)............................................................................. 15

*Knight through Kerr v. Miami-Dade County*,
   856 F.3d 795 (11th Cir. 2017)................................................................. 10, passim

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## TABLE OF CITATIONS (cont'd)

**Cases**                                                                 **Page(s)**

*Lipphardt v. Durango Steakhouse of Brandon, Inc.*,
   267 F.3d 1183 (11th Cir. 2001)...................................................................... 6

*Long v. Slaton*,
   508 F.3d 576 (11th Cir. 2007)...................................................................... 38

*Manuel v. City of Chicago*,
   335 F.3d 592 (7th Cir. 2003)....................................................................... 20

*McNair v. Coffey*,
   279 F.3d 463 (7th Cir.2002)....................................................................... 36

*Mighty v. Miami-Dade County*,
   659 F. App'x 969 (11th Cir. 2016)................................................................ 3

*Mighty v. Miami-Dade County*,
   728 F. App'x 974 (11th Cir. 2018).......................................................... 3, passim

*Oladeinde v. City of Birmingham*,
   230 F.3d 1275 (11th Cir. 2000)................................................................... 36

*Peat, Inc. v. Vanguard Research, Inc.*,
   378 F.3d 1154 (11th Cir. 2004)..................................................................... 7

*Priester v. City of Riviera Beach, Fla.*,
   208 F.3d 919 (11th Cir. 2000).................................................................... 36

*Rosenfield v. Wellington Leisure Products, Inc.*,
   827 F.2d 1493 (11th Cir. 1987)................................................................. 8, 36

*United States v. Augustin*,
   661 F.3d 1105 (11th Cir. 2011)................................................................. 8, 10

*United States v. Bodison*,
   523 F. App'x 601 (11th Cir. 2013)................................................................ 8

## TABLE OF CITATIONS (cont'd)

**Cases**                                                                 **Page(s)**

*United States v. Bowie*,
    232 F.3d 923 (D.C. Cir. 2000) ................................................................ 28

*United States v. Ellisor*,
    522 F.3d 1255 (11th Cir. 2008) ............................................................. 28

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) ............................................................. 14

*United States v. Hall*,
    653 F.2d 1002 (5th Cir. 1981) ............................................................... 19

*United States v. Hilliard*,
    752 F.2d 578, 582 (11th Cir. 1985) ...................................................... 30

*United States v. Holt*,
    777 F.3d 1234 (11th Cir. 2015) ............................................................. 34

*United States v. Martinez*,
    763 F.2d 1297 (11th Cir. 1985) ............................................................... 6

*Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*,
    674 F. Supp. 2d 1321 (S.D. Fla. 2009) ................................................. 15

**Statute**

42 U.S.C. Section 1983 ................................................................................. 3

**Rules**

Eleventh Circuit Rule 26.1-1 ............................................................... C-1 of 2

Federal R. App. P. 26.1 ........................................................................ C-1 of 2

Fed. R. App. P. 32(a)(5) ............................................................................ 40

## TABLE OF CITATIONS (cont'd)

**Rules**                                                          **Page(s)**

Fed. R. App. P. 32(a)(7)(B) ........................................................... 40

Fed. R. App. P. 32(f) ..................................................................... 40

Fed. R. Evid. 403 ........................................................................... 20

Fed. R. Evid. 404(b)(2) .................................................................. 27

Fed. R. Evid. 611(a) ....................................................................... 34

Federal Rule of Civil Procedure 61 ................................................ 35

Federal Rule of Civil Procedure 611 .............................................. 31

Federal Rule of Civil Procedure 611(a) .......................................... 31

Federal Rule of Evidence 404(b) ............................................... 27, 28

Federal Rule of Evidence 702 ........................................................ 14

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant/Appellee does not desire oral argument, and respectfully submits that oral argument is unnecessary here. The final judgment on appeal here follows a unanimous verdict rendered by a 10-person civil jury after less than 4 hours of deliberation, and Plaintiff's few and paltry disputes with the district court's evidentiary rulings fall far short of establishing any error, let alone one that substantially influenced the outcome of the trial.

The record is clear: the verdict was supported by overwhelming evidence, the district court did not abuse its discretion on any evidentiary rulings, and the district court did not err in denying Plaintiff's motion for a new trial. The unanimous verdict and final judgment in favor of Officer Miguel Carballosa should be affirmed without the need for oral argument.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## STATEMENT OF THE ISSUES

(1)    Whether Plaintiff is entitled to a new trial on her claim against Officer Miguel Carballosa.

## STATEMENT OF THE CASE

This case stems from a fatal encounter between Miami-Dade Police Officer Miguel Carballosa and David Alexis near midnight on October 2, 2012. At the time of the encounter, Officer Carballosa was in an unmarked police car, surveilling a residential property linked to a stolen vehicle that had previously fled police. The stolen vehicle had potential ties to a string of burglaries in the area.

As Officer Carballosa sat, uniformed, in his unmarked police car at night on a narrow residential street, a man unknown to him—later identified as David Alexis—approached Officer Carballosa's car with his hands concealed. Officer Carballosa lowered his driver's side window, identified himself as a police officer, and ordered the individual to show his hands. The individual, Alexis, not only remained completely silent, but also kept his right hand concealed behind his back. When Officer Carballosa exited his car and repeated his commands, Alexis— without saying a word in response to Carballosa's commands—immediately brought his right hand around from behind his back and pointed his firearm at Officer Carballosa. Presented with a defiant, non-responsive stranger brandishing a gun,

Officer Carballosa made the split-second decision to shoot in self-defense. Alexis expired on scene.

Plaintiff Trudy Mighty, as Personal Representative of Alexis's estate, filed suit against Officer Carballosa under 42 U.S.C. Section 1983, alleging Officer Carballosa used excessive force against Alexis. *See* DE 89. Officer Carballosa asserted qualified immunity throughout the proceedings, moved for dismissal and for summary judgment, and took interlocutory appeals of both denials. In two unpublished decisions, this Court affirmed the district court's denials of qualified immunity. *See Mighty v. Miami-Dade County*, 659 F. App'x 969 (11th Cir. 2016); *Mighty v. Miami-Dade County*, 728 F. App'x 974, 976 (11th Cir. 2018). As part of the second appeal, affirming the denial of summary judgment, this Court specifically noted a genuine dispute of material fact remained; namely, "whether Plaintiff posed a threat to Defendant when Defendant shot him." 728 F. App'x at 979. Accepting Plaintiff's theory of liability—that Alexis was not armed during the encounter with Officer Carballosa—this Court affirmed the denial of qualified immunity, and the case proceeded to trial.

The district court empaneled a 10-person jury. Over the course of a five-day trial, the jury heard from eleven different witnesses—seven of which were part of Plaintiff's case-in-chief. DE 363, DE 364, DE 365. Plaintiff's three-day case-in-chief included testimony from four different experts as well as emotional damages

testimony from Plaintiff herself and her 12-year old daughter, T.A., over Defendant's strenuous objection. DE 364 at 126-132. It bears noting that T.A. was **<u>five years old</u>** at the time of the incident and was not an eyewitness to the underlying incident. She testified solely regarding the relationship she had with Alexis, her deceased father, a transparent attempt to elicit an emotional response from the jury. *See, e.g.*, DE 364 at 127:14-16 ("Q. And what do you remember about your father, David Alexis? A. I remember that my father, David Alexis, he was a really good father to me, and I miss my dad so much."). Neither Plaintiff nor her daughter, T.A., testified regarding the underlying incident, as neither was present at the scene of the incident. In addition to this emotional damages testimony that did not bear on liability, the Court also admitted, over Defendant's objection, over a dozen photos of T.A. with Alexis—including images of T.A. at Alexis's gravesite—as well as a "booklet" of artwork by T.A. showing her father in heaven and laying in a coffin at his funeral. DE 337; DE 337-1. The jury also heard live testimony from Officer Carballosa himself, who was cross-examined by Plaintiff's counsel at length and without limit. DE 365 at 156-188.

At the conclusion of the trial, and after the district court denied Officer Carballosa's request for a special interrogatory, all 10 jurors deliberated for less than four hours and returned a unanimous verdict in favor of Officer Carballosa. DE 330; *see also* DE 367 at 38 (reflecting time at which jury entered courtroom and verdict

was published). The district court accordingly entered final judgment in Officer Carballosa's favor. DE 333. Plaintiff moved for a new trial. DE 343. The district court denied Plaintiff's motion for a new trial. DE 350. This appeal followed. DE 356.

## SUMMARY OF THE ARGUMENT

Plaintiff has, unsurprisingly, buried the lede. This appeal—the third in this action, after two interlocutory appeals—comes after Plaintiff got what she wanted all along: a jury trial. What Plaintiff evidently did not expect was the result: a 10-person civil jury that deliberated for less than 4 hours before rendering a unanimous verdict in favor of Officer Carballosa.

In an attempt to replay her hand, Plaintiff now cobbles together four evidentiary rulings, all of which were well within the district court's discretion, and all of which represent a fraction of the district court's evidentiary rulings over the course of the trial. Conspicuously absent, moreover, is any recognition from Plaintiff that the lion's share of the district court's evidentiary rulings were in her favor.

Plaintiff already attempted to seek a new trial before the district court. Now, she must demonstrate in this Court that the issues she raises on appeal somehow substantially influenced the outcome of the proceedings. To the extent Plaintiff quarrels with the discrete rulings she has raised in this appeal, she falls far short of demonstrating any error, let alone error that substantially influenced the outcome of

the trial. The district court did not abuse its discretion with respect to any of the evidentiary rulings on appeal, nor did it err in denying Plaintiff's motion for a new trial. Moreover, it is clear, based on the verdict, that the jury believed Officer Carballosa and rejected Plaintiff's theory of liability, and as a result, Officer Carballosa is entitled to qualified immunity.

The district court's order denying Plaintiff's motion for a new trial, as well as the final judgment in favor of Officer Carballosa, should be affirmed.

## ARGUMENT

## I.    PLAINTIFF IS NOT ENTITLED TO A NEW TRIAL

### A.    The Denial of Plaintiff's Motion for a New Trial Must Be Affirmed Because She Cannot Show the Verdict was Against the Great Weight of the Evidence

"[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)). "Motions for new trials based on weight of the evidence are not favored." *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985). "Courts are to grant them sparingly and with caution, doing so only in those really 'exceptional cases.'" *Id.* (citation omitted). "The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more

reasonable." *Id.* at 1312-13. To grant a new trial, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.*

Where, as here, a case turns primarily upon credibility determinations necessary to resolve highly disputed factual issues, the Court's discretion to order a new trial is further restricted by the deference the Court must give the jury's credibility findings. *See Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 571 F.3d 1143, 1145 (11th Cir. 2009); *Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995). "[T]his more rigorous standard of review ensures the [] court does not simply substitute its own credibility choices and inferences for the reasonable choices and inferences made by the jury." *Auto-Owners Ins. Co.*, 571 F.3d at 1145. "If the jury's verdict is supported by the evidence, then it is immaterial that . . . the [] judge would have arrived at the same [or a different] verdict because it is not [the Court's] place to substitute [its] judgment for that of the jury." *Id.*

The grant of a new trial on evidentiary grounds therefore requires not only an evidentiary error, but an error that has caused substantial prejudice to the affected party. *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004). Of course, "[a] motion for a new trial cannot be granted on the basis of evidentiary rulings that were rightly decided in the first instance." *Ghee v. Marten Transp., Ltd.*, 13-3922, 2014 WL 2871307, at *2 (3d Cir. June 25, 2014). Thus, to prevail on such

a motion, the movant must demonstrate <u>both</u> that the district court abused its discretion with regards to its evidentiary rulings <u>and</u> that those errors had a substantial influence on the outcome of the proceedings. *United States v. Bodison*, 523 F. App'x 601, 607 (11th Cir. 2013) (quoting *United States v. Augustin*, 661 F.3d 1105, 1127 (11th Cir. 2011)).

Finally, where, as here, the district court has denied the losing party's motion for a new trial, the Court affords substantial deference to that decision. *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987).

Plaintiff fails to establish grounds for a new trial because the jury's verdict underscores what <u>both</u> the district court <u>and</u> this Court repeatedly recognized as the central issue at trial: whether the jury credited Plaintiff's theory of liability, which asserted that Alexis was unarmed, or whether the jury believed that Officer Carballosa discharged his weapon in self-defense because Alexis was armed and posed a threat of serious bodily harm. *See Mighty*, 728 F. App'x at 979 ("If Defendant did not reasonably perceive that Alexis threatened him, his use of deadly force constituted a violation of Alexis's Fourth Amendment rights."). In other words, credibility was the linchpin of this trial, as the district court repeatedly recognized throughout. DE 366 at 24:9-12 ("It's a question of credibility."); 25:21-23 ("But if the jurors don't believe Officer Carballosa's testimony, the testimony of the experts is kind of irrelevant for the jurors; true?"); 68:17-25 ("If [the jurors do not believe

Officer Carballosa's testimony], you lose, right? . . . [T]hat's what the case is about, and I said it from the beginning . . . .").

Plaintiff now, in an attempt to "replay the game" because the jury rejected her theory of the case, distorts the critical issue at trial. The actual, discrete, outcome-determinative issue at trial, as recognized by this Court in the previous appeal, was whether Alexis posed an immediate threat to Officer Carballosa when he pointed his gun at the officer. *See Mighty*, 728 F. App'x at 979 ("The factor at issue here is whether Alexis posed an immediate threat to Defendant.").

The jury's finding of fact on this issue was entirely a function of whether they believed Officer Carballosa when he described his split-second decision to discharge his firearm. Crediting his testimony above Plaintiff's theory, the jury accepted that Officer Carballosa responded to Alexis inexplicably and quickly pointing his gun at the officer during their brief encounter during which Alexis never followed the officer's commands to show his hands and did not utter a word. The 10-person, unanimous verdict in Officer Carballosa's favor, and the speed with which the jury reached that verdict, unmistakably confirmed that the jury believed that Alexis posed an immediate threat to Officer Carballosa, thus rejecting Plaintiff's version of the facts.

The verdict confirms that Officer Carballosa did, indeed, face an immediate threat of deadly harm, and therefore he is entitled to qualified immunity on the

excessive force claim. Plaintiff has failed to establish grounds warranting a new trial here, and ordering a new trial would be an erroneous denial of Officer Carballosa's entitlement to qualified immunity.

### B.    The District Court Did Not Abuse its Discretion on Any Evidentiary Rulings

This Court has already stressed that it "'review[s] the district court's evidentiary rulings for an abuse of discretion, but will reverse only if the error may have had a substantial influence on the outcome of the proceeding.'" *Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 813 (11th Cir. 2017) (quoting *United States v. Augustin,* 661 F.3d 1105, 1127 (11th Cir. 2011)).

Here, Plaintiff appeals four discrete issues, not one of which can be deemed an abuse of discretion. The district court's evidentiary rulings throughout the trial—the overwhelming majority of which were rendered in Plaintiff's favor and are naturally not being challenged by her here—were well within its discretion and exercise of reasonable control. Not a single evidentiary ruling with which Plaintiff takes issue can be considered an abuse of discretion, let alone one that had a substantial influence on the outcome of the proceeding. And one issue, the introduction of Alexis's physical gun as an exhibit, was never objected to or raised by Plaintiff as an issue at trial. Its inclusion here is both improper and puzzling.

1.    **The District Court Did Not Abuse its Discretion in Admitting Dr. Lew's Testimony**

Dr. Emma Lew, the Chief Medical Examiner for Miami-Dade County, testified as a defense expert. Plaintiff, too, had a pathologist (and former medical examiner) testify in an expert capacity. Plaintiff does not take issue with Dr. Lew's expert testimony wholesale, but she claims that, with respect to the admission of a narrow portion of Dr. Lew's testimony, the district court abused its discretion. There are three flaws in Plaintiff's argument. First, the contested testimony was, contrary to Plaintiff's assertions, timely disclosed as it was elicited from Dr. Lew at her deposition, ***three years prior*** to the trial. Second, the testimony was admissible as both well within Dr. Lew's expertise *and* directly bearing on an issue that Plaintiff herself injected throughout this litigation. Third, Plaintiff waived her ability to seek a new trial on this issue when she declined the district court's numerous offers for a mistrial on this very issue.

On September 20, 2019—the third day of trial and ***in the middle of Dr. Lew's trial testimony***—Plaintiff objected to Dr. Lew's testimony regarding how Alexis's physical reaction to receiving gunshot wounds could explain the location of his gun at the scene. DE 365 at 271. This objection was not only untimely, but also meritless. Nevertheless, the district court excused the jury for the day; permitted Plaintiff to present oral argument, voir dire Dr. Lew, and conducted a mini-*Daubert* hearing; considered written briefing on the issue from both parties; and then heard *additional*

oral argument from the parties on the issue on when the trial resumed on September 23, 2019. DE 365; DE 366.

With the benefit of that briefing and oral argument, the district court learned that Dr. Lew had, in fact, given nearly identical testimony at her deposition three years prior on January 27, 2017. In other words, Plaintiff interrupted the testimony of Dr. Lew and lodged a disruptive and patently misleading objection ***in the presence of the jury***, all despite the fact that Plaintiff was well aware of this testimony for nearly three years, failed to present a timely challenge to this testimony through pre-trial motions (either under *Daubert* or as a motion *in limine*), and could not offer any good cause for that failure. DE 365 at 279:3-12 ("I would respectfully submit that, first of all, none of us are perfect . . . . Would it be better [to have filed a *Daubert* motion on this issue]? Yes."). This despite having filed a *Daubert* motion dedicated to limiting other portions of Dr. Lew's expert opinion (DE 243), as well as *Daubert* motions seeking to limit or exclude portions of every single other defense expert. DE 241; DE 242.

In other words, Dr. Lew's opinion was known to Plaintiff for almost three years before the commencement of trial—a fact Plaintiff conceded at least ***twice*** during trial.

The Court: So that means you knew about this type of testimony after the report during the deposition, right?

Plaintiff: Yes.

\* \* \*

The Court: I know, but she said something like that at the deposition.

Plaintiff: I can't disagree with you on that. I cannot disagree with you on that.

The Court: We are in 2019.

Plaintiff: I cannot disagree with you on that.

DE 365 at 276:14-17; 278:23-279:3. Again, despite being on notice of Dr. Lew's proffered testimony on this issue since January 2017, Plaintiff did not challenge or otherwise move to exclude any portion of it before trial.

In addition to being timely disclosed, Dr. Lew's opinion was well within the scope of her expertise. Dr. Lew's extensive experience investigating gunshot wounds qualified her to render an opinion regarding how the eyewitness testimony, together with the gunshot wounds Alexis sustained, explained the location of the gun. Given this foundation, her opinion, which applied her expertise to her evaluation of the physical evidence at the scene, was not speculative.

Plaintiff conveniently ignores that she herself put the location of Alexis's gun at issue throughout the course of this litigation. By arguing that, based on Officer Carballosa's testimony, the gun was in the "wrong" place, Plaintiff repeatedly eluded to a theory that the gun was planted at the scene. To that end, at both her deposition and at trial, Dr. Lew was asked about the location of Alexis's gun, as part of the evidence from the scene, and its consistency with her conclusions. Based on

Dr. Lew's experience and expertise as a forensic pathologist, she was well qualified to render an opinion regarding the location of Alexis's gun. Under Federal Rule of Evidence 702, expert testimony is admissible if (1) the expert is qualified to testify regarding the subject of the testimony; (2) the expert's methodology is "sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*"; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (citation and internal quotation marks omitted). The Court considered these factors and rightly determined that Dr. Lew's opinion met these standards. DE 366 at 70-74.

As Dr. Lew explained, the basis for her opinion regarding the location of Alexis's gun derived from Officer Carballosa and Yalysher Acevedo's statements, the physical evidence at the scene, the autopsy findings, as well as her knowledge and experience from over 1,000 crime scenes. Plaintiff had the unfettered opportunity to probe any weaknesses in the foundation of Dr. Lew's opinion on cross-examination—the appropriate forum for such challenges.

Plaintiff claims the district court's evidentiary ruling was error because Dr. Lew "admitted that her explanation was only 'possible' during the voir dire at trial, and thus not proper expert testimony as a matter of law." Initial Brief at 37. Tellingly, however, Plaintiff cannot identify a single case in support of her position that a court

must exclude an expert's opinion simply because it is qualified as a possibility, rather than a certainty. Plaintiff has not produced any authority compelling exclusion of "possible" explanations offered by experts. *See* Initial Brief at 32-42. And that is because no such bright-line rule exists. Although relevant expert testimony "is only admissible if the expert knows of facts which enable her to express a reasonably accurate conclusion as opposed to conjecture or speculation . . . ***absolute certainty is not required***." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citing *Jones v. Otis Elevator Co.,* 861 F.2d 655, 662 (11th Cir. 1988)) (emphasis added). It is within the court's discretion to determine whether a logical basis exists for admitting expert testimony, and any weaknesses in the expert's opinion go to the weight rather than the admissibility of the evidence. *Id.* at 1325. Thus, "[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility." *Id.*

For this precise reason, the Court afforded Plaintiff substantial leeway during Dr. Lew's cross-examination. DE 366 at 74:4-5 ("[T]o your heart's content, you can cross-examine Dr. Lew . . . ."). Any challenges Plaintiff had regarding questions of certainty with respect to Dr. Lew were fodder not for exclusion, but for cross-examination. Because Plaintiff was able to cross-examine Dr. Lew at length twice— first at the impromptu *Daubert* hearing and again at trial before the jury—without

time limits or constraints, regarding her opinions and testimony, Plaintiff cannot establish that this portion of Dr. Lew's testimony had a substantial influence on the outcome of the case. This is especially true where Plaintiff's own forensic pathologist, Dr. Marraccini, had himself already "render[ed] an opinion regarding the positioning of Mr. Alexis' body as he's being shot five times" and had further testified as to his opinion that Alexis's gun was in the "wrong" place. Initial Brief at 26; DE 364 at 94:2-14. In other words, both pathologists testified not only about the gunshot wounds and pathways and how those shots likely affected Alexis as he moved during the incident, but also about the location of the gun on the scene and its consistency with the testimonial evidence.

In addition to its admissibility on the merits, Dr. Lew's testimony was *also* admissible under the doctrine of curative admissibility. It was ***Plaintiff*** herself who made the location of Alexis's gun an issue throughout the trial, primarily through her own experts' speculative trial testimony. Indeed, during Plaintiff's case-in-chief, the Court permitted all three liability experts to testify, in one way or another, about the location of Alexis's gun, including even the forensic pathologist, Dr. John Marraccini. For example, Joseph Stine, a ***police practices*** expert, testified about ***his belief that Alexis intended to drop the gun*** when he brought his hands out from behind his back in response to Officer Carballosa's command to show his hands.

Over Defendant's objection to speculation, Plaintiff was permitted to elicit the
following testimony from Mr. Stine:

> Q: Now, you said when Mr. Alexis brings the gun around, is he
> following Officer Carballosa's alleged command?
>
> Mr. Stine: As far as I'm concerned, that's the only interpretation of
> what's said . . . I'm basing this on the officer's statement, that he told
> him to show me your hand. That's what Mr. Alexis did, he brought his
> hand out from behind his back to show him his hand.
>
> Q: ***Would that be consistent with his bringing the hand around and
> intending to drop the gun?***
>
> Defendant: Objection, speculation.
>
> THE COURT: Overruled on that basis.
>
> **Mr. Stine:** ***Absolutely, it could be consistent with that motion***. . . .

DE 365 at 26:11-24 (emphasis added). Similarly, Dr. Marraccini, Plaintiff's forensic
pathologist, offered his own thoughts and speculation regarding the location of
Alexis's gun:

> Q: Did you reach any opinions, Doctor, as to where the location of the
> gun that was on the police sketch and not marked got there?
>
> Dr. Marraccini: Well, ***I don't have any opinion how it got there. It's
> just in the wrong place.***
>
> Q: What do you mean by that?
>
> Dr. Marraccini: Well, I mean ***the gun is in the wrong place because it
> shouldn't be sitting in the midst of the ejected casings***. It should be out
> in front because obviously the victim is out in front and the gun is
> kicking ejected casings back and to the right. So ***the location of the***

> *firearm at the scene amidst the ejected casings was a matter of*
> *immediate concern when I was analyzing this case*.

DE 364 at 94:2-14 (emphasis added).

Finally, Gerald Styers, Plaintiff's firearms expert, initially offered an opinion

on direct examination that it was ***unlikely*** Alexis was holding his own gun when he

got shot. But then, on cross examination, he conceded that it was ***possible***:

> Q: You think it's ***unlikely*** that [Alexis] was holding his own gun. That's
> how you phrase it in your report?
>
> Mr. Styers: That's correct. That's based upon my ejection pattern, along
> with . . . Ms. Acevedo's testimony . . . .
>
> Q: So you don't believe the gun – that Springfield gun came to be in
> the street where it ends up as Alexis himself released it as he was being
> shot; is that right?
>
> Mr. Styers: ***I can't be absolute*** how that firearm became there. All I
> know it was there located within the pattern of the cartridge cases.
>
> Q: So you haven't excluded the possibility that Alexis was holding his
> gun?
>
> Mr. Styers: I can't say that absolutely***. It could have been placed there***
> ***in some other way***. . . .
>
> Q: [I]s it your opinion here today that David Alexis was not holding his
> gun when Officer Carballosa discharged his service weapon?
>
> Mr. Styers: I can't say absolutely he wasn't holding it or not holding it.
> I can't say absolutely.
>
> Q: Your opinion allows for the possibility that David Alexis was
> holding his gun when Officer Carballosa shot him? . . .
>
> Plaintiff: Objection as to possibility, Your Honor.

THE COURT: Well, you know, I am going to allow the possibility. Go ahead. . . .

Mr. Styers: Like I said before, it's based upon the ejection pattern of the cartridge cases. I don't know how that firearm got there, number one. Okay. ***It could have been dropped or placed there. There's no evidence of that being dropped***, that firearm itself.

DE 364 at 49:15-50-5; 52:11-20; 54:3-13 (emphasis added).

"[O]ut of fairness, once all of this [came] in . . . [,]" the district court correctly permitted Dr. Lew to complete her testimony. DE 366 at 73:9-13. In doing so, the district court exercised its discretion under the doctrine of curative admissibility, a concept also known as "opening the door" or "fighting fire with fire." *Bearint ex rel. Bearint v. Dorell Juv. Group, Inc.*, 389 F.3d 1339, 1349 (11th Cir. 2004) (quoting *United States v. Hall*, 653 F.2d 1002, 1007 (5th Cir. 1981)). Under this doctrine, when one party offers inadmissible evidence before a jury—as Plaintiff did in her case-in-chief—the court may allow the opposing party to offer otherwise inadmissible evidence on the same issue to rebut any unfair prejudice created. *Id*. (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 177 n.2 (1988) (Rehnquist, J., dissenting) (curative admissibility an "exercise of judicial discretion")); *Cal. Ins. Co. v. Allen*, 235 F.2d 178, 180 (5th Cir. 1956) (doctrine permitted "only to the extent necessary to remove any unfair prejudice"); *Crawford v. United States*, 198 F.2d 976, 978-79 (D.C. Cir. 1952) (doctrine rests "upon the necessity of removing prejudice in the interest of fairness"). Ultimately, "the extent to which otherwise

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

inadmissible evidence is permitted must correspond to the unfair prejudice created. Further, the trial court must also weigh the need for and value of the rebuttal evidence against the potential for undue delay, confusion, and prejudice." Fed. R. Evid. 403; *Manuel v. City of Chicago*, 335 F.3d 592, 597 (7th Cir. 2003).

Because the jury had already heard all of Plaintiff's experts offer substantial testimony regarding Alexis's gun being in the "wrong" location, the district court correctly concluded that Dr. Lew's testimony was sufficiently probative of that same issue to warrant admission in response. In coming to that conclusion, the Court conducted a Rule 403 analysis and found that the probative value was not substantially outweighed by a danger of unfair prejudice. DE 366 at 70-74. This was not an abuse of discretion.

Plaintiff also failed to avail herself of her opportunity to present a rebuttal case. Nothing prevented Plaintiff from calling her experts to rebut Dr. Lew's testimony about the location of the gun. Mr. Stine, Plaintiff's police practices expert, was present and sitting in the courtroom on Monday, September 23, 2019, *after* Dr. Lew had testified. Dr. Marraccini, Plaintiff's forensic pathology expert, is a local Miami physician, and readily available for rebuttal testimony. It was Plaintiff's own, strategic decision not to call back any experts to elicit additional testimony.

Moreover, the district court afforded Plaintiff great leeway with Dr. Lew's cross-examination, overruling ***every one*** of Officer Carballosa's objections. DE 366

at 80-92. In this sense, Plaintiff's counsel was practically unrestricted on cross-examination, having ample opportunity to cure any purported prejudice by testing the sufficiency of Dr. Lew's testimony before the jury.

And to the extent that a danger of unfair prejudice existed, the district court remedied such risk by issuing an instruction immediately before Dr. Lew resumed her testimony. Despite Plaintiff's failure to object or seek any alternative relief following the district court's ruling to admit the testimony, the district court *sua sponte* instructed the jury as to the value of expert witness testimony. DE 366 at 75:20-77-6 (reiterating that the jury "can accept or reject an expert's opinion."). Not only did such an instruction eliminate any danger of unfair prejudice to Plaintiff, the instruction—which was not given prior to any of Plaintiff's experts taking the stand—arguably created a risk of unfair prejudice to Defendant, who did not benefit from any such instruction during Plaintiff's case-in-chief. In any event, by giving such an instruction before Dr. Lew's remaining testimony, the district court contemporaneously ensured that the jury would ascribe the appropriate weight to her final opinion regarding the location of Alexis's gun.

Plaintiff also claims that the denial of some unspecified curative instruction somehow constituted error. *See* Initial Brief at 32, 38-40. But Plaintiff mischaracterizes the nature of the relief she sought at trial. During the trial, Plaintiff requested a curative instruction that was <u>part and parcel</u> of her request to strike Dr.

Lew's testimony outright. Specifically, Plaintiff requested that the Court *not only* preclude Dr. Lew from further testifying, *but also* instruct the jury that the testimony already elicited about Alexis's gun coming out of his hand and flying forward was stricken and should not be considered during deliberations because it was improper. DE 366 at 29:13-23 ("The Court: What kind of curative instruction do you want? I assume you would want that if I don't let the testimony that occurred after the jury left. ***Plaintiff: Right.***"). The curative instruction was not an alternative relief sought; it was part of Plaintiff's motion to strike Dr. Lew's testimony. After the Court ruled that Dr. Lew could complete her testimony, Plaintiff failed to request any other curative or limiting instruction. *See generally* DE 366 at 74 (reflecting no further objection or argument by Plaintiff's counsel following the Court's ruling).

Finally, it bears noting that Plaintiff forfeited her ability to seek a new trial on this issue where she expressly declined the district court's repeated offers to declare a mistrial on this very issue. Dr. Lew's testimony was abruptly interrupted by Plaintiff's objection on the evening of Friday, September 20, and it did not resume before the district court released the jury for the weekend. DE 365 at 272. Over the weekend, both parties submitted trial briefs regarding the contested portion of Dr. Lew's testimony, and the district court again revisited the issue on the morning of Monday, September 23. Before letting the jury back in, the district court offered ***both parties*** the opportunity to request, and receive, a new trial at that point. ***Both parties***

22

*declined the offer*. "It is not the court's function to let a lawyer who guesses wrong replay the game." *Bank of the South v. Ft. Lauderdale Tech. College, Inc.*, 48 F.R.D. 136, 138 (E.D. La. 1969).

The district court explicitly asked both Plaintiff and Defendant whether either party wanted a new trial based on the issue raised by Dr. Lew's testimony. Plaintiff unequivocally declined to accept the district court's offer *at least four separate times*:

The Court: How about from the plaintiff's standpoint?

**Plaintiff: Yes, Your Honor, we are not moving for a mistrial.**

**The Court: You are not moving for a mistrial?**

**Plaintiff: No, Your Honor.**

The Court: So that means you can never complain either way. If I let it in -- because if I find that her testimony was pretty much the same, and if you look at the paragraphs, it was pretty much the same, before and after and you have a chance to cross-examine the doctor and proceed with your argument, you cannot raise the issue of the doctor's testimony and the theatrics of where the gun is because of the pain. That's where it's possible, probable.

Plaintiff: Your Honor, if I may? It's –

**The Court: No, no. That means you cannot ask for a new trial because of that. Do you understand?**

**Plaintiff: Understood.**

**The Court: And that's a strategic decision that you have made after consultation with all the lawyers and your client. Look at them and decide. Right?**

*Plaintiff: Correct, Your Honor.*

The Court: Okay. So now I've boxed you in on that. That's why I wanted to start. So you're not getting it, because if you wanted to, I would give it to you, point blank. If you think it's so unfair, that's what would happen*. **So that means you can never, ever, ever -- someone is going to lose -- go up to the Court of Appeals and say, this was crucial. This is what made the decision.***

DE 366 at 10:23-11:25 (emphasis added).

The district court painstakingly cautioned the parties regarding the consequences of not agreeing to a new trial, and Plaintiff's counsel repeatedly affirmed that Plaintiff understood the consequences of refusing to accept the proffered mistrial and acknowledged that this was a ***strategic decision*** made after consultation with Plaintiff's team of lawyers as well as the client herself. Plaintiff cannot now rewrite history when faced with a verdict she does not like.

By repeatedly rejecting the opportunity of a mistrial, Plaintiff waived the ability to seek a new trial after the jury found against her. *See Hendrix v. Sterilite Corp.*, 742 F. Supp. 2d 1277, 1279 (N.D. Ala. 2010) (finding both parties waived the opportunity for a new trial where neither party asked the court to declare a mistrial); *Jones v. Illinois Cent. R. Co.*, 617 F.3d 843, 851-52 (6th Cir. 2010) ("Mrs. Jones did not request a mistrial. . . . ***Having bet on the jury and lost, she is not permitted now to seek a new trial on the basis of potential prejudice that was apparent during trial.***") (emphasis added). An adverse outcome for Plaintiff does

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

not justify a new trial, especially where Plaintiff previously failed to avail herself of the very relief she now seeks. Plaintiff's request for a new trial on the basis of Dr. Lew's testimony—after she expressly disclaimed a desire for a mistrial on these grounds—must be denied.

### 2.    The District Court Did Not Abuse its Discretion in Admitting Ms. Acevedo's Testimony

Plaintiff claims the district court abused its discretion by admitting testimony from an eyewitness, Yalysher Acevedo, regarding a prior incident during which Alexis, her then-boyfriend, brandished his gun at her. *See* Initial Brief at 42-48. She is wrong, for two reasons. First, Plaintiff waived this objection. She did not challenge this testimony at trial, only raising the issue of Alexis's prior "bad acts" generally in a motion *in limine*, which the district court granted nearly in full, excluding relevant evidence regarding the quality of Alexis's relationship with Plaintiff, to Defendant's detriment.

At no point during the trial, however, did Plaintiff object to the testimony she now challenges on appeal:

Q: Now, Mr. Alexis actually at one point pointed that gun at you, ma'am; isn't that true?

A: Do I have to answer that? What does that have to do with the situation here?

Q: Well, is it true that he actually pointed a gun at you at one point?

A: Yes.

Q: Right. And he pointed that gun at you while outside of his house; isn't that true?

A: Yes.

Q: And you were outside of his house?

A: I was in my car.

Q: Right. And he pointed that gun at you and you said he pointed it at your car, right?

A: Yes.

Q: Knowing it was you that was inside that car; isn't that right?

A: Right.

Q: And you didn't know whether he was going to shoot you or not, right?

A: No.

Q: In fact, you told us that when he pointed the gun at you that he'd probably kill me. Those were your words; isn't that true?

A: Yes.

Q: And this happened in the house that's on 113th Terrace, right?

A: Yes.

Q: Right in front of the house where this incident took place; isn't that right?

A: Correct.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

DE 363 at 59:6-60:11. Plaintiff did not object to this testimony at trial, nor did she raise this alleged error in her motion for a new trial. DE 343. Accordingly, this argument is waived.

Because Plaintiff challenges these statements for the first time on appeal, this Court should not address it now. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1335 (11th Cir. 2004). This Court has recognized that, where the appellant did not object during the trial or raise any such claims in a motion for a new trial, the issue is waived. *See Knight*, 856 F.3d at 818 ("The plaintiffs did not object during the defendants' closing statements, nor did they raise any claims regarding the closing statements in their motion for a new trial. Thus, they gave the trial court no opportunity to address the 'offending comments.' The plaintiffs have waived this argument.").

Even if Plaintiff had not waived this argument, however, she cannot show that it was an abuse of discretion to admit this testimony, let alone one that had a substantial influence on the outcome. Plaintiff herself has, throughout this multi-year litigation, pursued a theory of liability premised upon her baseless assertion that Alexis was unarmed during his encounter with Officer Carballosa. Ms. Acevedo's testimony regarding Alexis's access to and use of his own gun prior to that date was admissible under Federal Rule of Evidence 404(b), as it bore directly on, at a minimum, absence of mistake and opportunity. *See* Fed. R. Evid. 404(b)(2) ("This

evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

Federal courts uniformly construe Rule 404(b) as a "rule of inclusion rather than exclusion." *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000). The rule "allows [extrinsic] evidence unless it tends to prove ***only*** criminal propensity." *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008) (emphasis added). Here, even assuming Plaintiff had not waived this challenge, the requisite nexus existed under 404(b) to admit Ms. Acevedo's testimony as evidence of opportunity, absence of mistake, or lack of accident with respect to the question of whether Alexis was armed with his own gun when he encountered Officer Carballosa. And again, even if Plaintiff could show that she had not waived this argument, *and* that the district court abused its discretion by admitting Ms. Acevedo's testimony, she would still have to establish that this testimony had a substantial influence on the outcome. Tellingly, she does not even attempt to do so in her Initial Brief. And because she cannot, this argument does not establish grounds for a new trial.

### 3. The District Court Did Not Abuse its Discretion in Excluding Alexis's Firearm, which Plaintiff Failed to List as a Trial Exhibit

This issue, raised by Plaintiff for the very first time on appeal, presents an even more glaring example of unequivocal waiver. The issue is this: at the

conclusion of Plaintiff's case-in-chief, while Plaintiff's counsel was "bookkeeping" and "making sure that the exhibits [were] all marked," Plaintiff's counsel orally included Alexis's actual weapon, the physical gun itself, as an exhibit to be introduced. This was the exchange in its entirety:

Plaintiff: And the pistol, Your Honor.

The Court: What pistol?

Plaintiff: The one that's been testified to.

The Court: Does it have a number?

Plaintiff: We can give it Number 41.

Defendant: No, that's a demonstrative, 41.

Plaintiff: It's not a demonstrative. It's the actual weapon, 41.

The Court: Does it [have a] number?

Plaintiff: I'll give it 41.

The Court: Did it have a number before?

Plaintiff: I don't honestly remember, Your Honor.

The Court: It did not. It does not come in. Anything else from the plaintiff?

Plaintiff: Not now. We have the cross-examination.

The Court: This would be the time.

Plaintiff: Yes, I understand, Your Honor.

The Court: So what does the plaintiff say?

Plaintiff: We rest.

DE 365 at 61:2-20. <u>Plaintiff never objected to the Court's exclusion of the gun, and she never re-raised the issue.</u> Notably, Plaintiff had not previously sought to introduce Alexis's actual firearm through any of her witnesses, including her expert witnesses. And Plaintiff had not listed the actual weapon on her own exhibit list.

Given that Plaintiff did not object when the district court, in its broad discretion with respect to trial management, rebuffed her attempt to belatedly introduce the exhibit without a witness, this argument is waived. What's more, Plaintiff did not raise this issue as grounds for reversal in her motion for new trial. Simply put, there is no way around it: Plaintiff did not, at any point, ever make this argument prior to appeal, and she cannot raise it for the first time on appeal. *See Access Now, Inc.*, 385 F.3d at 1335; *Knight*, 856 F.3d at 818.

Even assuming, however, that Plaintiff had not waived this argument, she cannot remotely establish that it was an abuse of discretion, nor that this ruling had a substantial influence on the outcome of the trial. This Court has long recognized "the broad discretion district courts have in managing their cases." *Knight*, 856 F.3d at 811; *see also United States v. Hilliard*, 752 F.2d 578, 582 (11th Cir. 1985) ("It is well settled that the trial judge has broad discretion in the management of the trial and that a reviewing court should not interfere absent a clear showing of abuse.").

The district court's adherence to Plaintiff's own exhibit list, particularly where Plaintiff had not introduced the actual weapon into evidence through any of the testimony adduced during her case-in-chief, fell well within its broad discretion. And, in light of the fact that <u>dozens</u> of photographs of the weapon in question were in fact admitted into evidence (DE 336; DE 336-1; DE 337; DE 337-1), and therefore available to the jury as part of its deliberations, Plaintiff cannot show that the absence of the physical weapon itself as an introduced exhibit had <u>any</u> influence on the outcome here. This claim wholly lacks merit.

> **4.     The District Court Did Not Abuse its Discretion in Exercising Reasonable Control Over the Mode and Order of Examining Witnesses and Presenting Evidence With Respect to Officer Carballosa's Testimony**

Federal Rule of Civil Procedure 611 is clear: "The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Civ. P. 611(a). Plaintiff claims the district court abused its discretion when, *at calendar call*, the district court informed Plaintiff she would not be permitted to play portions of Officer Carballosa's videotaped deposition in lieu of live testimony, given his availability to testify in person. And she additionally appeals her inability to conduct a cross-examination of the officer when she called him to testify on direct examination during her own case-in-chief. However, Officer

Carballosa was available throughout the entire trial and, ultimately, he was called as a live witness during Defendant's case-in-chief. And at that point Plaintiff did cross-examine him, at length and without limitation.

This Court has repeatedly "'stressed the broad discretion district courts have in managing their cases.'" *Knight*, 856 F.3d at 811 (quoting *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002)) (internal alteration omitted). Plaintiff's grievances with the district court's managing of this trial fall far short of rising to an abuse of discretion, let alone one that had a substantial influence on the outcome of the proceeding.

Plaintiff first complains that she was "precluded from showing designated portions of Defendant Carballosa's videotaped deposition, which is allowed under [Federal Rule of Civil Procedure] 32(a)(3)." Initial Brief at 15. Plaintiff's memory is faulty at best. At calendar call prior to trial, Plaintiff announced her intention to merely play portions of Officer Carballosa's deposition testimony in lieu of live testimony. The following exchange was had:

> The Court: Okay. Now, you're going to call Officer Carballosa?
>
> Plaintiff: No, sir. We have designated portions of his deposition by video.
>
> The Court: No, this is what we do: We don't do that because he's going to be called by the defense, right?
>
> Defendant: Yes, yes.

The Court: [W]e don't read portions of a deposition. Number one, the jurors just fall asleep on it, or even if you have video with all of that, it takes you forever to work on it. If the witness is going to testify, you've got him. And then you can ask him, well, do you remember your deposition being taken on such and such a date? Do you remember this question, Page 19, Line 32?

Plaintiff: I got it, Judge.

The Court: Bingo.

Plaintiff: I got it, Judge. We'll call him.

The Court: And that's of any witness called. We don't do that, unless the person is not here.

DE 307 at 31:24-32:18.

Plaintiff, in other words, was told not to use deposition testimony *in place of* the live testimony of an available witness. She was never precluded from using any portions of Officer Carballosa's deposition in another capacity. Unsurprisingly, Plaintiff fails to note that she never sought to introduce portions of Officer Carballosa's deposition during the trial (and, arguably, failed to object even at calendar call). She could have played portions of his deposition during her cross-examination of Officer Carballosa—as she notes, for any reason whatsoever. Plaintiff chose not to, and she failed to raise the issue again at the trial.

Plaintiff additionally asserts on appeal that the district court abused its discretion by "precluding her from asking him leading questions during her case-in-chief." Initial Brief at 53. Plaintiff concedes the district court had "discretion to

exercise reasonable control over the mode and order of examining witnesses under Fed. R. Evid. 611(a)," but nevertheless argues that her inability to cross-examine Officer Carballosa during her case-in-chief "resulted in harmful error." *Id.* at 53-54. Plaintiff, again, withholds pertinent information: here, that she did in fact cross-examine Officer Carballosa when he took the stand during his own case-in-chief, and that her cross-examination of Officer Carballosa was unlimited in both time and scope. DE 365 at 156-188.

Plaintiff's failure to identify even a single case in support of her position regarding either of these issues is telling. As the Eleventh Circuit has explained:

> Rule 611(c), however, does not give the calling party an absolute right to ask leading questions. Instead, the district court has the discretion to allow or disallow leading questions of a witness identified with an adverse party, and once the district court exercises [its] discretion in that regard, the movant must establish an abuse of discretion to obtain a reversal.

*Jaffe v. Bank of Am., N.A.*, 395 F. App'x 583, 588 (11th Cir. 2010); internal quotation marks and citations omitted). During the trial, the district court explained that this ruling—instructing Plaintiff to *choose* whether to call Officer Carballosa during her case-in-chief, or whether to cross-examine him later—was meant to avoid repetitive testimony and the need to call a live witness more than once. DE 363 at 75:11-77:6. In other words, it "was necessary to keep the trial moving along in an orderly fashion." *Jaffe*, 395 F. App'x at 588. The Eleventh Circuit has recognized that district courts have "broad discretion in the management of a trial," *United States v.*

34

*Holt*, 777 F.3d 1234, 1268 (11th Cir. 2015), and given that Plaintiff was ultimately afforded the unfettered opportunity to cross-examine Officer Carballosa, she cannot show error, let alone harmful error, with respect to the district court's ruling on this issue.

### C.    Plaintiff is Not Entitled to a New Trial Because Any Errors Below Were Harmless

Even if this Court were to find errors committed by the district court below, Plaintiff is still not entitled to a new trial because the verdict was not against the great weight of the evidence. In her Initial Brief, Plaintiff does not even attempt to show that the verdict was against the great weight of the evidence, instead focusing solely and exclusively on alleged errors in the district court's evidentiary rulings.

But even if Plaintiff could show error, she fails to overcome the presumption of harmless error. Federal Rule of Civil Procedure 61 provides:

> Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order.

Fed. R. Civ. P. 61 (emphasis added).

This Court gives deference to "the trial court's first-hand experience of the witnesses, their demeanor, the context of the trial, and the like." *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 362 (5th Cir. 1980). "This level of deference

is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed." *Rosenfield*, 827 F.2d at 1498.

In denying Plaintiff's motion for a new trial, the district court effectively reaffirmed its rulings, and great deference is owed to this decision, as the district court had the ability to observe the jury and evaluate the presentation of the evidence firsthand. *Conway*, 610 F.2d at 362.

### D.    Officer Carballosa is Entitled to Qualified Immunity

Plaintiff is also not entitled to a new trial because Officer Carballosa is entitled to qualified immunity. "In determining whether a government official is entitled to qualified immunity following a jury verdict, we view the evidence in the light most favorable to the party that prevailed at trial." *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1290 (11th Cir. 2000); *see also Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 n.3 (11th Cir. 2000); *Frazell v. Flanigan*, 102 F.3d 877, 886 (7th Cir. 1996) ("we are bound by the jury's resolution of disputed factual issues in assessing Flanigan's immunity defense"), *overruled on other grounds*, *McNair v. Coffey*, 279 F.3d 463 (7th Cir.2002); *Acosta v. City & Cnty. of San Francisco*, 83 F.3d 1143, 1147 (9th Cir. 1996). As such, the Court must "give deference to the jury's 'discernible resolution of disputed factual issues.'" *Oladeinde*, 230 F.3d at 1290 (quoting *Iacobucci v. Boulter*, 193 F.3d 14, 23 (1st Cir. 1999)).

Prior to trial, Officer Carballosa was denied summary judgment because of the existence of a genuine dispute of material fact that required a jury to resolve. Specifically, this Court noted:

> The factor at issue here is whether Alexis posed an immediate threat to Defendant. Viewing the facts in the light most favorable to Plaintiff, we must assume that Alexis was not holding a gun—and that Defendant did not reasonably perceive him to be armed—meaning there is a disputed issue of fact as to whether Plaintiff posed a threat to Defendant when Defendant shot him. If Defendant did not reasonably perceive that Alexis threatened him, his use of deadly force constituted a violation of Alexis's Fourth Amendment rights.

*Mighty*, 728 F. App'x at 979.

In finding that Officer Carballosa's use of force did not violate Alexis's constitutional rights, the jury resolved that disputed issue of fact, and affirmed Officer Carballosa's entitlement to qualified immunity. The evidence shows that Officer Carballosa's actions were objectively reasonable and did not contravene clearly established law, because the evidence adduced at trial established that Officer Carballosa responded by making a split-second decision to use deadly force only when faced with a threat of serious bodily harm himself. Specifically, the jury's verdict rejected Plaintiff's theory of liability, that Alexis was not armed, and instead credited Officer Carballosa's testimony regarding the incident.

In light of the jury's verdict, Officer Carballosa is entitled to qualified immunity, given that this Court has repeatedly recognized an officer's entitlement to qualified immunity where he is faced with a deadly force scenario. *See, e.g.*,

*Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821-22 (11th Cir. 2010) (holding that an officer faced with a deadly force scenario is not "required to wait and 'hope[ ] for the best'"); *Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007) ("[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect."); *Harrell v. Decatur County, Ga.*, 22 F.3d 1570, 1579 (11th Cir. 1994) (Dubina, J., dissenting) (holding that the "use of deadly force does strike such a balance [under *Graham v. Connor*, 490 U.S. 386 (1989)] when necessary as an act of self-defense"), *vacated on rehearing*, 41 F.3d 1494 (11th Cir. 1995).

Because qualified immunity is an immunity from suit, and not merely a defense to liability, ordering a new trial after the jury has already determined that Officer Carballosa's actions were not objectively unreasonable would be a denial of his qualified immunity.

## <u>CONCLUSION</u>

For all of the reasons above, final judgment in favor of Officer Carballosa should be affirmed.

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
MIAMI-DADE COUNTY ATTORNEY
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Phone: (305) 375-5151
Fax: (305) 375-5611

By:    *s/ Anita Viciana*
Anita Viciana
Florida Bar No. 115838
Bernard Pastor
Florida Bar No. 46582
Jennifer L. Hochstadt
Florida Bar No. 56035
Assistant County Attorneys
*Attorneys for Defendant/Appellee*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it has been prepared in a proportionally based typeface using Microsoft Word, 14-point Times New Roman, and because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,917 words.

*s/ Anita Viciana*
Anita Viciana
Assistant County Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 12, 2020, a true and correct copy of the foregoing brief was electronically filed via ECF and was served on counsel for Plaintiff/Appellant via ECF.

*s/ Anita Viciana*
Anita Viciana
Assistant County Attorney

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151